No. 92,030

STATE OF KANSAS, *Appellee,* v. MARSHALL M. VOYLES, II,
*Appellant.*

(160 P.3d 794)

Opinion filed June 22, 2007.

*Korey A. Kaul,* of Kansas Appellate Defender Office, argued the cause, and *Shawn E. Minihan,* of the same office, was on the brief for appellant.

*Bradford L. Williams,* county attorney, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Nuss, J.: This multiple acts case provides us the opportunity to determine the continuing viability of our standard of review for the failure to "elect or instruct" as articulated in *State v. Hill,* 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001).

For Marshall M. Voyles, II's conduct involving two girls in as many as five different locations, he was charged with and convicted of eight counts: two counts per girl for aggravated indecent solicitation of a child in violation of K.S.A. 21-3511 and two counts per girl of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1). Among other things, on appeal he claimed error based

upon the State's failure to elect which of several acts it relied upon to constitute each count, and the court's failure to provide an instruction requiring the jury to agree upon the specific act constituting each count. The Court of Appeals affirmed in *State v. Voyles*, 34 Kan. App. 2d 110, 116 P.3d 720 (2005). We granted Voyles' petition for review, and our jurisdiction is pursuant to K.S.A. 20-3018(b).

The issues on appeal, and this court's accompanying holdings, are as follows:

1. Was the district court's failure to provide a unanimity instruction reversible error? Yes.
2. Is subsection (a)(1) of the Kansas aggravated criminal sodomy statute, K.S.A. 21-3506, unconstitutional under the Due Process Clause of the United States Constitution and § 10 of the Kansas Constitution Bill of Rights? No.
3. Did the district court err in ordering Voyles to reimburse the State Board of Indigents' Defense Services? Yes.

Accordingly, the judgment of the Court of Appeals affirming the district court is reversed, and the judgment of the district court is reversed and remanded.

## FACTS

Voyles is the biological father of C.C. (female; born 1993) and the stepfather of E.F. (female; born 1992). Thelma Voyles (Thelma), Marshall Voyles' wife, is the biological mother of E.F.

After the stepsisters, 9-year-old C.C. and 10-year-old E.F., returned home from school on October 8, 2002, they gave Thelma a letter. It stated: "I need to tell you something about dad. We wanted to tell you before but we were scared. He is makeing [sic] us do you know whate [sic]." After reading the letter, Thelma asked the girls for clarification; they responded that Voyles was "making them suck his [penis]." According to Thelma, E.F. had written the letter.

Greatly concerned about the allegations, later that day Thelma sought the advice of her aunt, Sheila Miller. Thelma showed Miller the letter and disclosed the girls' description of what Voyles did.

Miller then asked the girls about the incidents. According to Miller, they explained that Voyles made them perform oral sex on him at five different locations. They also told Miller that they performed oral sex on Voyles to get out of being punished, to get out of doing chores, and to get ice cream.

Approximately 1 month later, on November 11, 2002, John Theis, a social worker and therapist at Horizons Mental Health Center in Hutchinson, conducted a sexual abuse evaluation of the girls. He first interviewed 10-year-old E.F., Voyles' stepdaughter. During the videotaped interview, she told Theis that Voyles made her perform oral sex on him two or three times. E.F. described the act of oral sex and stated that the incidents took place in their house in Norwich—in Voyles' bedroom and on a couch in the living room. According to E.F., one of the incidents occurred when she and C.C. got into trouble. She told Theis that she also saw C.C. perform oral sex on Voyles. E.F. explained that she or C.C. would play on the computer while the other performed oral sex on Voyles. E.F. stated that the incidents occurred after the 4th of July but before school started during the summer of 2002.

Theis then interviewed 9-year-old C.C., Voyles' biological daughter. While E.F. had said E.F. performed oral sex on Voyles two to three times, during C.C.'s videotaped interview C.C. told Theis that Voyles made her perform oral sex on him three or four times. Like E.F., she mentioned as locations the bed in his bedroom and the couch in her house, *i.e.*, in the living room. She also mentioned, however, his truck and her grandmother's house. She further stated that the first incident occurred on the couch in her house. Like E.F., C.C. told Theis that she played on the computer while E.F. performed oral sex on Voyles, and then the girls switched. Following one or two of the incidents, Voyles gave each girl a dollar. C.C. also indicated that the incidents occurred during the past summer; however, she believed the incidents occurred prior to the 4th of July. She said that once in Voyles' truck, he had touched C.C. and E.F. on the clothing covering their privates.

The next month the State charged Voyles with four counts of aggravated criminal sodomy and four counts of aggravated indecent solicitation of a child. The complaint initially alleged that the in-

cidents occurred on or about August 2002. However, at trial, the district court granted the State's request to amend the complaint to allege that the incidents occurred between June and August 2002.

Miller testified at trial on behalf of the State. She stated that the girls told her they had performed oral sex upon Voyles and that the conduct occurred at five locations:

"One of them happened in their mom's own bed. One happened in the front room when they were—one was on the computer and one was doing him and then when they got done the other one got to play on the computer. One time in the truck, one time at the café and one time at their grandma's house."

Theis also testified for the State, but the specifics of his knowledge of the episodes were primarily established by the playing of the girls' videotaped interviews for the jury. Additionally, both C.C. and E.F. testified.

C.C. testified somewhat differently from her earlier accounts, *i.e.*, to Miller and later to Theis. While she again stated that there were three or four incidents, she also testified that the incidents occurred only in their house or in Voyles' pickup truck, *i.e.*, not at her grandmother's house or at a café.

According to C.C., the first incident occurred in the living room of their home in Norwich. She and E.F. had been grounded, and Voyles made them perform oral sex on him to get out of trouble. C.C. stated that on another occasion, after each girl performed oral sex on Voyles, he gave them each a dollar to buy snacks.

E.F.'s trial testimony did not provide details of the alleged incidents. She did indicate, however, that she told both Miller and Theis the truth.

Voyles testified and denied that he ever asked C.C. or E.F. to perform oral sex on him.

The jury found Voyles guilty on all eight counts: for each girl, two counts of aggravated indecent solicitation of a child and two counts of aggravated criminal sodomy. After the district court denied Voyles' motion for mistrial and directed verdict of acquittal, it ordered him to serve a controlling prison sentence of 248 months.

The Court of Appeals affirmed in *State v. Voyles*, 34 Kan. App. 2d 110.

## ANALYSIS

Issue 1: *The district court's failure to provide a unanimity instruction was reversible error.*

Voyles alleges that his constitutional right to a unanimous jury verdict was violated when the district court failed to give a unanimity jury instruction, *i.e.*, the jury was not told to unanimously agree upon the specific act which constituted each count. The State responds that the error was harmless. Both sides cite *State v. Hill*, 271 Kan. 929. Our analysis of this issue involves several steps.

The threshold question is whether we are presented with a multiple acts case. If not, Voyles' argument fails. As we stated in *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 (2005):

" 'In a multiple acts case, several acts are alleged and any one of them could constitute the crime charged. . . . [Citations omitted.] Whether a case is a multiple acts case is a question of law over which this court has unlimited review. [Citation omitted.]' *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003). The threshold question in a multiple acts analysis is whether the defendant's conduct is part of one act or represents multiple acts which are *separate and distinct* from each other. [Citation omitted.]" (Emphasis added.)

We agree with the Court of Appeals that we are presented with a multiple acts case. Voyles' conduct involved different times—occurring over a several-month period during the summer of 2002—and different locations, demonstrating acts which are separate and distinct from each other. Indeed, accepting the girls' videotaped statements that one act of solicitation, followed by one act of aggravated sodomy, was performed at several locations on each girl, and accepting Miller's testimony that the girls told her of incidents at five different locations, then potentially 20 different acts or offenses were committed; Voyles was charged with but eight counts.

After determining that we are dealing with a multiple acts case, the second question is whether error was committed. If not, Voyles' argument obviously fails at this stage. In a multiple acts case we require that "either the State *must* inform the jury which act to

rely on in its deliberations or the court *must* instruct the jury to agree on a specific criminal act." (Emphasis added.) *State v. Dean*, 272 Kan. 429, 439, 33 P.3d 225 (2001).

We agree with the Court of Appeals that error was committed. The record reveals that no election—actual or its functional equivalent—was made by the State and no instruction requiring unanimous agreement on a specific act for a particular count was given by the trial court. Inherent in the holding of *Hill* is the conclusion that this failure constitutes error: after this failure to elect or instruct, the court resolved "the harmless error-structural error conflict." 271 Kan. at 934.

Having concluded this is a multiple acts case in which error was committed, the third question is whether the error warrants reversal. In *Hill*, this court rejected the defendant's argument that the error was structural, *i.e.*, requiring automatic reversal, a rationale and result first espoused in *State v. Barber*, 26 Kan. App. 2d 330, 988 P.2d 250 (1999). Instead, after stating that the lack of an instruction request typically required an examination for "clear error," the *Hill* court specified the steps of a third analytical approach:

"We reject the structural error approach and apply a two-step harmless error analysis to Hill's contention that a unanimity instruction should have been given. In applying a harmless error analysis, [1] the first step is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motived by 'a fresh impulse.' [2] When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts." 271 Kan. at 939.

Here, the Court of Appeals acknowledged that the analysis for determining whether the failure to give a unanimity instruction was clear error entitling Voyles to a new trial "has been problematic. See, *e.g.*, Ediger, *Elect or Instruct: Preventing Evidence of Multiple Acts from Threatening Juror Unanimity in Criminal Trials*, 74

J.K.B.A. 28 (May 2005); Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Cases in Kansas*, 44 Washburn L.J. 275 (2005)." 34 Kan. App. 2d at 115.

After reciting *Hill*'s two-step formula and concluding—per the first step—that factual separability existed, the Court of Appeals then glided over the specifics of the rest of the formula. As further explained below, the glide was with good reason. The court instead seized upon what it determined was a dispositive feature in similar cases decided by this court and the Court of Appeals from *Hill* forward:

"Based upon careful scrutiny of appellate case law addressing this issue in similar situations, harmless error must ultimately be determined from an examination of whether the defendant has presented separate defenses to any of the acts alleged. See [*State v.*] *Banks*, 273 Kan. [738,] at 746[, 46 P.3d 546 (2002)]; *State v. Dean*, 272 Kan. 429, 443-44, 33 P.3d 225 (2001); *Hill*, 271 Kan. at 938-39; *State v. Shoptaw* 30 Kan. App. 2d 1059, 1061, 56 P.3d 303, *rev. denied* 275 Kan. 968 (2002); *State v. Arculeo*, 29 Kan. App. 2d [962,] at 974-75[, 36 P.3d 305 (2001)]." 34 Kan. App. 2d at 116.

The Court of Appeals essentially acknowledged its glide over parts of *Hill*'s harmless error formula:

"Although we are cognizant that this *appears* to be merely an alternative analysis for step one of the *Hill* test [*i.e.*, a possibility of jury confusion from the record or if evidence showed either legally or factually separate incidents], it is undeniably the only true touchstone for harmless error in cases of this nature. We respectfully conclude that in multiple acts cases, controlling case law requires that if, as here, it is determined that factually separate incidents have been alleged, failure to give a unanimity instruction must be deemed harmless *if* the defendant has presented a unified defense to all of those acts." (Emphasis added.) 34 Kan. App. 2d at 116.

The court observed that Voyles presented a unified defense: "As in *Banks, Dean, Hill, Shoptaw*, and *Arculeo*, Voyles did not present a separate defense or offer materially distinct evidence of impeachment regarding one or more of the acts alleged. Instead, he presented a general denial of participation in any wrongful conduct with these girls during the summer of 2002." 34 Kan. App. 2d at 117. In responding to Voyles' argument that his defense was not unified because of questions as to proper venue for some of the acts alleged, the court was correct in observing that this challenge was posttrial and therefore correct in holding that posttrial argu-

ments do not establish a legally separate defense for purposes of the harmless error analysis of failure to provide a unanimity instruction. 34 Kan. App. 2d at 116.

The Court of Appeals therefore rejected any possibility of jury confusion—returning to part of the *Hill* formula's first step—and held that Voyles' claimed error was harmless: "There was no reason to assume jury confusion, and any failure to give a unanimity instruction was harmless error." 34 Kan. App. 2d at 117. Given the evidence in this case, implicit in the court's holding is a reliance upon our statement in *State v. Banks*, 273 Kan. 738, 746, 46 P.3d 546 (2002): "We do not believe that the difference in testimony of the victims concerning the number of times they were touched is determinative."

The same day the *Voyles* court released its opinion, two of its panel members—Judges Greene and Buser—were joined by Judge Caplinger in releasing another multiple acts opinion, *State v. Walsh*, No. 91,953, unpublished opinion filed July 15, 2005. *Walsh* is instructive because it reveals a clear line drawn by the panel in multiple acts cases based upon its reading of Kansas case law. While the *Voyles* panel had acknowledged that the failure to elect or instruct was harmless error if the defendant has presented a unified defense to all the separate acts, the panel in *Walsh* now acknowledged the limits of such holdings. It stated: "[N]otwithstanding the purported 'two-step test' in *Hill*, controlling case law has *only* concluded such an error [failure to elect or instruct is] harmless where the defendant has presented a unified defense to all of the alleged acts." (Emphasis added.) Slip op. at 9. In other words, the *Walsh* court concluded that, in the absence of a unified defense, Kansas appellate decisions to date had practically regarded the multiple acts error as structural.

Because Walsh asserted a different defense to each violent offense charged, the *Walsh* court held that "[w]here both factual [different factual situations] and legal separability [different defenses] are clearly shown, we are unable to conclude that the failure to give a unanimity instruction was harmless." Slip op. at 9. The court concluded that this was "precisely the type of jury confusion sought to be avoided by the use of a unanimity instruction, and the

court's failure to give the instruction . . . was clear error." Slip op. at 9.

*Overview*

It should first be acknowledged that in all multiple acts cases, the lack of a "particular act" election by the State and the lack of instruction to the jury that it must unanimously agree upon the particular act constituting the offense create the potential for some uncertainty as to whether the jury unanimously agreed upon any particular act. See *State v. Kitchen,* 110 Wash. 2d 403, 411, 756 P.2d 105 (1988) ("When the State fails to make a proper election and the trial court fails to instruct the jury on unanimity, there is . . . error. The error stems from the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction.").

Consider the example of a defendant who allegedly committed an illegal sex act against the same victim in five different locations on five different days: one in the victim's bedroom, one in the defendant's car, one in a neighbor's pasture, one in the victim's school gym, and one in the bus station. The State charges only one count and fails to elect a particular act; the court fails to supply the "agree upon the act" unanimity instruction.

The defendant generally denies any wrongful conduct, when in reality he did commit such an act in the gym. The victim truthfully testifies that the defendant committed the act in the gym but, for whatever reason, falsely testifies that he also committed the acts in the four other locations as well. The jury returns a verdict finding him guilty as charged: the one count of the illegal sex act.

However, the verdict does not disclose whether the jury unanimously found the defendant guilty of committing a particular act on a particular day at a particular location. Indeed, the hypothetical jury verdict actually was mixed. Five members agreed the wrongful act occurred only in the bed; three members agreed the wrongful act occurred only in the car; two members agreed the wrongful act occurred only in the pasture; and two members agreed the wrongful act occurred only in the bus station. Accordingly, for that one

particular act upon which each group's members agreed, each member has believed the victim's testimony and disbelieved the defendant's denial. However, each group's members have clearly rejected the four other acts, *i.e.*, they essentially disbelieved the victim's testimony and believed the defendant's denial.

In this hypothetical, the defendant was convicted of committing a particular act based upon no more than five votes. Hardly a unanimous verdict. Yet to date, so long as the defense is a general denial, Kansas jurisprudence has tolerated this degree of verdict uncertainty, *i.e.*, the error is not reversible. See, *e.g.*, *State v. Hill*, 271 Kan. 929, 939-40, 26 P.3d 1267 (2001) (two acts constituting rape; one count); *State v. Arculeo*, 29 Kan. App. 2d 962, 975, 36 P.3d 305 (2001) ("evidence indicated that the incidents of sexual acts occurred more than the one time charged").

Having established in multiple acts cases the ever-present potential for verdict uncertainty and possible jury confusion, it is next important to set the analytical framework for our decision on the consequences of unanimity-based error. *Cf. United States v. Sims*, 975 F.2d 1225, 1240-41 (6th Cir. 1992) ("presence of a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts").

*Reviewing the Hill formula*

A critical consideration at the outset is: What is our general standard of review of a district court's failure to provide a specific unanimity instruction in a multiple acts case? Because we rejected structural error in *Hill*, a number of other options have been suggested.

First, because in the instant case no instruction was requested or given, the clearly erroneous standard could be applied. In *Hill*, the defendant also failed to request an instruction, and none was given. The court then acknowledged: "Generally, when no request or objection is made, we reverse only if the failure to give an instruction was clearly erroneous." 271 Kan. at 934. See K.S.A. 2006 Supp. 22-3414(3). Instructions are clearly erroneous if the reviewing court is firmly convinced that there is a real possibility the jury

would have returned a different verdict if the trial error had not occurred. *State v. Torres,* 280 Kan. 309, 321-22, 121 P.3d 429 (2005).

After the *Hill* court's "clearly erroneous" recitation, however, it instead crafted its own two-step analytical formula previously mentioned. The Court of Appeals in the instant case also framed its search as one for "clear error" but then cited *Hill* and made some effort to follow the *Hill* formula. See *Voyles,* 34 Kan. App. 2d at 115. In *Walsh,* where no specific unanimity instruction was requested, the Court of Appeals searched for and found "clear error." Slip op. at 9. In *Banks,* 273 Kan. 738, no instruction was requested and this court cited the clearly erroneous standard articulated in K.S.A. 2006 Supp. 22-3414(3) and in case law. However, this court then stated: "As indicated in *Hill,* the appropriate analysis is one of harmless error" and applied the *Hill* formula. *Banks,* 273 Kan. at 744-45. In *State v. Dean,* 272 Kan. 429, 442-44, 33 P.3d 225 (2001), this court moved straight to the *Hill* formula, but the opinion is unclear whether a unanimity instruction had been requested.

Second, step two of *Hill's* formula could be applied as the standard of review. That step concluded with "determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts." 271 Kan. at 939. The *Hill* court gave no citation for expression of this standard, and it is unclear from whence it came. It may have come from the District of Columbia Court of Appeals cases cited earlier in *Hill* and cases cited within them. See, *e.g., Scarborough v. United States,* 522 A.2d 869, 870 (D.C. 1987) ("We agree that this omission of a special unanimity instruction violated appellant's sixth amendment rights . . . [W]e also conclude that the error was harmless beyond a reasonable doubt.").

By the *Scarborough* court's immediate citation to, among other cases, *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), clearly the court was stating a standard applicable to federal constitutional error. Such a standard is inapplicable to the instant case because the right to a unanimous jury verdict in a Kansas court is not a federal constitutional right or a state constitutional right, but rather a state statutory one. See *John-*

*son v. Louisiana,* 406 U.S. 356, 32 L. Ed. 2d 152, 92 S. Ct. 1620 (1972) (state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict); *Apodaca v. Oregon,* 406 U.S. 404, 32 L. Ed 2d 184, 92 S. Ct. 1628 (1972) (9-3 verdict satisfied constitutional right to trial by jury); Kansas Constitution Bill of Rights, §§ 5 (trial by jury) and 10 (rights of the accused in prosecutions); K.S.A. 22-3421; K.S.A. 22-3423(1)(d).

We have limited the application of this federal standard, with only a few exceptions, to federal constitutional error. See *State v. Tosh,* 278 Kan. 83, 95-98, 91 P.3d 1204 (2004) (prosecutorial misconduct reviewed under both federal and state standard); *State v. Donesay,* 265 Kan. 60, 85-88, 959 P.2d 862 (1998) (admission of irrelevant evidence concerning murder victim intended to inflame jury reviewed under both federal and state standard).

Third, one commentator's suggestion could also be followed for the appropriate standard of review:

"[T]he court should apply the standard harmless error test of [1] determining whether the error caused prejudice to the substantial rights of a complaining party or [2] *if the court can declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the result of the trial.*" (Emphasis added.) Ediger, *Elect or Instruct: Preventing Evidence of Multiple Acts from Threatening Juror Unanimity in Criminal Trials,* 74 J.K.B.A. 28, 39 (May 2005) (citing *Horton v. United States,* 541 A.2d 604, 611-12 [D.C. 1988]).

The italicized passage is but a variation on the federal constitutional error standard. See *State v. Peltier,* 249 Kan. 415, 426, 819 P.2d 628 (1991), *cert. denied* 505 U.S. 1207 (1992) (An error of constitutional magnitude cannot be held to be harmless unless the appellate court can declare beyond a reasonable doubt that the error had little, if any, likelihood of changing the results of the trial.). As mentioned, the federal standard, however articulated, is inapplicable to our facts.

Fourth, the Kansas harmless error statute, K.S.A. 60-261, which typically applies to allegations of nonconstitutional error, could be followed. It provides:

"No error in either the admission of the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict

or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court *inconsistent with substantial justice.* The court at every state of the proceeding must disregard any error or defect in the proceeding which does not *affect the substantial rights of the parties.*" (Emphasis added.)

As commentator Ediger suggests in the nonitalicized portion of his article's excerpt provided above, we have construed the statute to mean that "[e]rrors that do not affirmatively cause prejudice to the substantial rights of a complaining party do not require reversal when substantial justice has been done." *Peltier*, 249 Kan. at 426. This test was utilized in, among other cases, *Arculeo*, 29 Kan. App. 2d at 975 (finding harmless error and reciting this standard).

*Abandoning the Hill formula*

Our review of Kansas law reveals that our courts have struggled to follow *Hill's* formula and have sometimes glided over it in order to reach firmer ground. We also acknowledge that the formula has been subjected to some legitimate criticism. As opined by one commentator, "[i]n crafting a harmless error rule, it [the *Hill* formula] swallowed too much of the substantive analysis." 74 J.B.A.K. at 39. Stated another way by Justice Beier of this court, one of many reasons "to criticize *Hill* is that its two-part test conflates [1] the search for error and [2] the classification of any error as harmless or reversible." Beier, *Lurching Toward the Light: Alternative Means and Multiple Acts Cases in Kansas*, 44 Washburn L.J. 275, 310 (2005). We conclude that the formula is confusing and an unwieldy combination of factors; it should be abandoned.

The proper analytical framework instead consists of the three steps already articulated. First, determine if the case truly involves multiple acts—thus eliminating the *Hill* formula's need for a later examination of "factual separability." Second, determine if error has occurred, *i.e.*, a failure to elect or instruct. Third, determine if the error is reversible.

For the third step, the ultimate and specific test for harmlessness under the circumstances of this case is the "clearly erroneous" standard, not *Hill's* "harmless beyond a reasonable doubt with respect to all acts" or the other options previously discussed. We so

conclude because "clearly erroneous" is the standard established by the Kansas Legislature, and followed by this court, for the specific situation when no jury instruction has been requested or given and no constitutional error has been alleged. See K.S.A. 2006 Supp. 22-3414(3). *Cf. Sims,* 975 F.2d at 1240 ("When a defendant fails to object to the lack of a unanimity instruction, the court reviews the instructions for plain error. . . . Thus, the appropriate standard of review is consideration for plain error.").

*Application of clearly erroneous standard to the instant case*

The Court of Appeals accurately observed that Kansas appellate courts have held a "failure to instruct" in multiple acts cases to be reversible error except when the defendant presents a unified defense, *e.g.*, a general denial. If there is no unified defense, we do not tolerate verdict uncertainty in these cases. Stated in the language of the clearly erroneous standard of review applicable when no unanimity instruction has been requested, cases not containing a unified defense are reversed because the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given. See *Torres,* 280 Kan. at 321-22.

Here, however, we are not dealing with simply a unified defense—in one of its purest forms, a mere credibility contest between the victims and the alleged perpetrator. We have some discrepancies between the girls themselves, some discrepancies between the girls and Miller, and some inconsistencies in C.C.'s statements, *i.e.*, what she told Theis on the videotape and what she testified to at trial. A review of the evidence reveals a number of factually separate incidents during the summer of 2002 from which the jury could have found Voyles guilty of aggravated criminal sodomy and/or aggravated indecent solicitation of a child. By C.C.'s own account, both in her interview with Theis and at trial, Voyles made her perform oral sex on him three or four times. E.F. told Theis the acts occurred two or three times. Miller's testimony alone identified five locations.

Indeed, accepting the girls' statements that one act of solicitation, followed by one act of aggravated sodomy, was performed on

each girl at different locations apparently on different days, and accepting Miller's testimony that the girls told her of incidents at five different locations, then potentially 20 different acts or offenses could have been committed. By contrast, Voyles was charged with eight counts.

More specifically, we cannot know whether the jury believed that the two counts of solicitation of E.F. were based upon the same factual episodes as the aggravated sodomy counts: based upon E.F.'s testimony alone, it had two or three different episodes from which to choose. The same holds true, but even more so, for C.C. We cannot know whether the jury believed that the two counts of solicitation of C.C. were based upon the same factual episodes as the aggravated sodomy counts; based upon her testimony alone, the jury had three to four different episodes from which to choose. It is possible that the jury believed from C.C.'s videotaped interview that Voyles' rubbing of the girls' privates through their clothing while in the truck on one occasion may have been a solicitation to commit an unlawful sexual act but did not result in an aggravated sodomy. Indeed, according to E.F.'s statements, all the oral sex acts occurred in the house.

We acknowledge that *Banks,* 273 Kan. 738, contains some parallels to the instant case, *i.e.*, a difference in testimony concerning the number of times the victims were touched by defendant. There, two young females, T.N. and L.H., alleged episodes—minutes apart—of improper touching by Banks at two locations, a laundry and his house. He offered a general denial defense.

Regarding the laundry conduct, victim T.N. testified Banks touched both girls there. However, T.N.'s mother testified that both girls reported that only T.N. had been touched there. Similarly, L.H. testified Banks touched T.N. there and implied L.H. was not touched. But Deputy Couch testified that L.H. told him Banks had touched both girls there. Social worker Peters testified that T.N. told her Banks touched only T.N. there, and social worker Theis testified that L.H. told him that Banks touched only T.N. there. Detective Trujillo testified that T.N. told her Banks touched T.N. and that L.H. told her he touched L.H.—but with no information on location.

Regarding Banks' house conduct, victim T.N. testified that Banks touched both girls there. Other evidence was to the contrary. Victim L.H. testified Banks touched L.H. there, but not T.N.; T.N.'s mother testified that both girls reported Banks had touched L.H. there, but not T.N. And Crouch testified that Banks had touched only L.H. there. Peters testified that T.N. told her Banks touched only L.H. there, and Theis testified that L.H. told him Banks touched only L.H. there.

The *Banks* court did "not believe that the difference in testimony of the victims concerning the number of times they were touched at each location [was] determinative" and held that the failure to give a unanimity instruction was harmless error. 273 Kan. at 746. This general rationale from *Banks* is disapproved.

We acknowledge that youthful victims reporting incidents, giving statements, and testifying cannot provide mathematical certainty about events. We also acknowledge, however, the substantial prejudice to a defendant when the equivalent of evidence of propensity to commit crime—more multiple acts than charges, without an election or instruction—is placed before a jury. Accordingly, instead of prosecutors relying upon appellate courts to essentially use the victims' youth-caused inconsistencies as a basis for finding the error harmless, we continue to conclude that the better solution is for the State to elect or for the trial court to instruct on unanimity in multiple acts cases—as we have clearly required since at least 2001. See *Hill,* 271 Kan. at 940 (expressing concern that prosecutors instead would believe they have carte blanche to rely upon harmless error review). Because we are firmly convinced that under these facts there is a real possibility the jury would have returned a different verdict if the unanimity instruction had been given, we reverse and remand to the district court for a new trial.

The concurring opinion expresses concern about the generic evidence child abuse cases, *i.e.,* those involving "multiple indistinguishable acts of sexual abuse of young children." While other members of this court are equally as concerned about such young victims, the instant case does not involve generic evidence.

Voyles claims additional defenses and trial court error. One is potentially dispositive of some of the criminal charges as a matter

of law, *i.e.*, the purported unconstitutionality of the statutory subsection on aggravated criminal sodomy with a child under age 14. Another may, if he is convicted after trial on remand, arise again in the district court. We therefore address them below. *Cf. State v. Kunellis,* 276 Kan. 461, 476, 78 P.3d 776 (2003).

**Issue 2:** *Subsection (a)(1) of the Kansas aggravated criminal sodomy statute, K.S.A. 21-3506, is not unconstitutional under the Due Process Clause of the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.*

Next, Voyles argues that subsection (a)(1) of the Kansas aggravated criminal sodomy statute, K.S.A. 21-3506, is unconstitutional under the federal Due Process Clause and § 10 of the Kansas Constitution Bill of Rights because it constitutes a blanket proscription of consensual, intimate activities of all unmarried persons under 14 years of age without regard to maturity. The interpretation of a statute is a question of law, and this court's review is unlimited. *State v. Maass,* 275 Kan. 328, 330, 64 P.3d 382 (2003).

As the Court of Appeals correctly noted, Voyles did not bring his claim before the district court. Generally, when a constitutional basis for reversal is brought for the first time on appeal, the claim is not properly before an appellate court for review. *State v. Williams,* 275 Kan. 284, 288, 64 P.3d 353 (2003). Three notable exceptions exist, however:

"(1) The newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason. [Citations omitted.]" 275 Kan. at 288-89.

The Court of Appeals ultimately decided to address the merits of Voyles' contention under subsection (a)(1).

As a preliminary issue, the court questioned Voyles' standing to challenge "consensual, private intimate activities" because there was no allegation that the conduct was consensual. In support, it cited *State v. Thompson,* 221 Kan. 165, 558 P.2d 1079 (1976). There, this court analyzed the constitutionality of a former version of the aggravated sodomy statute. This court held that the defend-

ant lacked standing to claim that the statute unconstitutionally prohibited private, consensual acts of adults because the defendant was convicted of forcible sodomy. 221 Kan. at 171-73. In the present case, although the court noted the standing issue, it ultimately ruled against Voyles on the merits of his argument.

The statute in the present case provides: "Aggravated criminal sodomy is . . . [s]odomy with a child who is under 14 years of age." K.S.A. 21-3506(a)(1). General considerations concerning a constitutionality review are set forth in *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197-98, 62 P.3d 236 (2003).

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken it must clearly appear the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done." *State v. Martis*, 277 Kan. 267, 298, 83 P.3d 1216 (2002).

The United States Supreme Court currently recognizes three levels of scrutiny in analyzing due process claims. See *Farley v. Engelken*, 241 Kan. 663, 669, 740 P.2d 1058 (1987). The highest level of scrutiny, "strict scrutiny," applies in cases involving suspect classifications and fundamental rights expressly or implicitly guaranteed by the Constitution. 241 Kan. at 669. Strict scrutiny has applied to the fundamental rights of voting, privacy, marriage, and travel. *Hill v. Stone*, 421 U.S. 289, 44 L. Ed. 2d 172, 95 S. Ct. 1637, *reh. denied* 422 U.S. 1029 (1975) (voting); *Shapiro v. Thompson*, 394 U.S. 618, 634, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969) (residential requirements for welfare recipients); *Loving v. Virginia*, 388 U.S. 1, 18 L. Ed. 2d 1010, 87 S. Ct. 1817 (1967) (interracial marriages); *Griswold v. Connecticut*, 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965) (contraceptives and marital privacy). Strict scrutiny has also been applied to the suspect classes of alienage, race, and ancestry. *Graham v. Richardson*, 403 U.S. 365, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971) (alienage); *McLaughlin v. Florida*, 379 U.S. 184, 13 L. Ed. 2d 222, 85 S. Ct. 283 (1964) (race); *Oyama v. California*, 332 U.S. 633, 92 L. Ed. 249, 68 S. Ct. 269 (1948) (ancestry).

The intermediate level of judicial review is "heightened scrutiny." *Farley*, 241 Kan. at 669. Heightened scrutiny applies to "quasi-suspect" classifications, and it requires the statutory classification to substantially further a legitimate legislative purpose. 241 Kan. at 669. Intermediate level scrutiny has been applied in cases of discrimination based on gender and illegitimacy. *Pickett v. Brown*, 462 U.S. 1, 76 L. Ed. 2d 372, 103 S. Ct. 2199 (1983) (illegitimacy); *Reed v. Reed*, 404 U.S. 71, 30 L. Ed. 2d 225, 92 S. Ct. 251 (1971) (gender).

The lowest level of review is the least strict "rational basis" test. *Farley*, 241 Kan. at 669. Under this standard of review, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Romer v. Evans*, 517 U.S. 620, 632, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996); *McGowan v. Maryland*, 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961); *KPERS v. Reimer & Koger Assocs., Inc.*, 261 Kan. 17, 41-42, 927 P.2d 466 (1996). Accordingly, a statutory discrimination will not be set aside if any facts may reasonably justify it. *Mudd*, 275 Kan. at 198.

In the present case, despite his attempts to the contrary, Voyles does not allege a violation based on fundamental rights, suspect classification, or gender. Therefore, the lowest level of judicial review—the rational basis test—applies. Under this test, in order for K.S.A. 21-3506(a)(1) to pass constitutional muster, it must meet the following criteria: "(1) it must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. [Citations omitted.]" *Mudd*, 275 Kan. at 198.

As the Court of Appeals noted, the reasoning in *State v. Taylor*, 33 Kan. App. 2d 284, 101 P.3d 1283 (2004), *rev. denied* 279 Kan. 1010 (2005), is applicable in the present case. There, the court addressed an argument similar to Voyles': the purported unconstitutionality of K.S.A. 21-3504(a)(1), aggravated indecent liberties with a child. That statute criminalizes "[s]exual intercourse with a child who is 14 or more years of age but less than 16 years of age." As in this case, the defendant argued that the statute imposes a

" '[b]lanket proscription upon consensual, private intimate activities of all unmarried persons under age sixteen without regard to the [*sic*] maturity, [which] violates the Due Process Clause.' " 33 Kan. App. 2d at 286.

Citing *State v. Risjord*, 249 Kan. 497, 501-02, 819 P.2d 638 (1991), the *Taylor* court explained that for the defendant to prevail on appeal, the defendant must show that no rational relationship existed between the statute and a legitimate government objective. 33 Kan. App. 2d at 286. Under this standard, the court rejected Taylor's claim, stating:

"The State has a compelling interest in the well-being of its children and in the exercise of its police powers may enact legislation to protect children from adult sexual predators. [Citation omitted.] We conclude a rational relationship exists between K.S.A. 21-3504(a)(1) and the legitimate interests of the State." 33 Kan. App. 2d at 286.

Just as the *Taylor* court concluded concerning K.S.A. 21-3504(a)(1), so too do we conclude that K.S.A. 21-3506(a)(1) implicates the legitimate goal of protecting the well-being of children from adult sexual predators. Voyles' challenge fails.

Issue 3: *Voyles' claim that the district court erred in ordering him to reimburse the State Board of Indigents' Defense Services will, if he is convicted upon retrial, be governed by State v. Robinson.*

Finally, Voyles argues that the district court erred in ordering him to reimburse the State Board of Indigents' Defense Services (BIDS) for attorney fees because the court failed to consider his ability to pay, the financial burden that payment would impose, and the validity of the fees.

The reimbursement statute, K.S.A. 2006 Supp. 22-4513, provides:

"(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.

"(b) In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of

the burden that payment of such sum will impose. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive all or part of the amount due or modify the method of payment."

In the event of Voyles' conviction upon retrial, the district court will be bound to follow K.S.A. 2006 Supp. 22-4513, as recently interpreted by this court in *State v. Robinson,* 281 Kan. 538, 132 P.3d 934 (2006). There, we held that a sentencing court assessing fees to reimburse BIDS must consider on the record at the time of assessment the financial resources of the defendant and the nature of the burden that payment of the fees will impose. 281 Kan. 538, Syl. ¶ 1. We also held that the sentencing court's failure to explicitly consider the financial resources of the defendant and the nature of the burden that payment of the fees would impose was reversible error. 281 Kan. at 546-48.

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed and the case is remanded.

McFARLAND, C.J., concurring: I have grave concerns about some of what is stated in the majority opinion as to how multiple acts cases are to be tried. I also have major problems with what is not said in the majority opinion. I will first discuss what I believe is wrong with what is stated in the opinion. The key holdings of the majority opinion relative to multiple acts cases are summarized in Syllabus ¶¶ 1-5, as follows:

Syllabus ¶ 1.   "When a jury unanimity is at issue, the threshold question is whether an appellate court is presented with a multiple acts case. This determination is a question of law over which an appellate court exercises unlimited review."

Syllabus ¶ 2.   "When jury unanimity is at issue in what has been determined to be a multiple acts case, the second question is whether error was committed. In a multiple acts case, either the State must inform the jury which act to rely upon in its delib-

erations or the court must instruct the jury to agree on the specific criminal act. The failure to elect or instruct is error."

Syllabus ¶ 3. "When in a multiple acts case the State has not informed the jury which act to rely upon in its deliberations and the trial court has failed to instruct the jury to agree on a specific criminal act, the third question is whether that error warrants reversal. The formula previously enunciated in *State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001), is abandoned. The ultimate general test for harmlessness when a unanimity instruction was not requested or given is "clearly erroneous" as articulated by the Kansas Legislature in K.S.A. 2006 Supp. 22-3414(3)."

Syllabus ¶ 4. "When a unanimity instruction was not requested or given and no general denial was presented by the defendant, an appellate court may conclude that the failure to instruct the jury to agree on a specific criminal act warrants reversal under the clearly erroneous standard."

Syllabus ¶ 5. "When a unanimity instruction was not requested or given but the defendant has made a general denial, error may be reversible when the trial is not merely a credibility contest between the victim and the defendant, *e.g.*, due to inconsistent testimony from the victim."

Presumably, Syllabus ¶ 5 is intended to set out the majority's holding, found on pages 16 and 17 of the opinion, as follows:

"The Court of Appeals accurately observed that Kansas appellate courts have held a 'failure to instruct' in multiple acts cases to be reversible error except when the defendant presents a unified defense, *e.g.*, a general denial. If there is no unified defense, we do not tolerate verdict uncertainty in these cases. Stated in the language of the clearly erroneous standard of review applicable when no unanimity instruction has been requested, cases not containing a unified defense are reversed because the reviewing court is firmly convinced that there is a real possibility the jury would have returned a different verdict if the instruction had been given. [Citation omitted.]

"Here, however, we are not dealing with simply a unified defense—in one of its purest forms, a mere credibility contest between the victims and the alleged perpetrator. We have some discrepancies between the girls themselves, some

discrepancies between the girls and Miller, and some inconsistencies in C.C.'s statements."

First, I have a problem with this language from Syllabus ¶ 5: "[E]rror may be reversible when the trial is *not merely a credibility contest between the victim and the defendant, e.g., due to inconsistent testimony from the victim.*" (Emphasis added.) The statement that a "credibility contest" case is somehow no longer a credibility contest if there are inconsistencies in the victim's statements and testimony is simply illogical. A victim's prior inconsistent statements and/or his or her contradictory testimony go to the victim's credibility. The jury considers evidence of inconsistent statements in determining what weight should be afforded to the victim's testimony—in other words, the credibility of the victim. So how can the existence of facts that a jury considers in determining credibility render a credibility contest not a credibility contest?

Second, what is meant by the terms "credibility contest" and "general denial" and how are they consistent with one another? Is a "general denial" limited to those cases in which the defendant rests solely on his or her not guilty plea? If the defendant has not provided any version of the events at issue through statements or testimony, choosing instead to put the State to its burden of proof by his or her not guilty plea, how is the case a "credibility contest?" The term "contest" implies that both sides are participating in a competition, *i.e.,* the defendant has offered some version of the events to contradict the victim's version. This, however, is inconsistent with the idea of a "general denial."

Concerns with the language of Syllabus ¶ 5 aside, essentially, the court holds that the failure to give a unanimity instruction *sua sponte* may be reversible error even if the defense was a general denial, if there were inconsistencies in the State's evidence concerning the various acts. According to the majority, the only "general denial" cases not subject to reversal are the pure "he-said, she-said" credibility contests with no inconsistent victim evidence. Such a holding fails to appreciate the reality that there will almost always be inconsistencies among statements given by victims to police, social workers, relatives and friends, at preliminary hearing, and at

trial. Thus, the practical effect of the ruling today is to render reversible all cases involving multiple acts in which the trial court failed to give a unanimity instruction *sua sponte*.

Additionally, there is no requirement that such inconsistencies must be significant. Particularly, in the area of sex crimes, there are going to be inconsistencies. This is even more true when the victims are young children. Insignificant inconsistencies should not be a basis of reversal.

Lastly, if a "pure" credibility case is one in which there are competing versions of events as told by the victim and the defendant, and inconsistencies in the victim's version(s) may require reversal in the absence of a multiple acts instruction, how do inconsistencies in the defendant's version of events factor into the question of clear error?

As Justice Carol A. Beier explained in her article, *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*, 44 Washburn L.J. 275 (2005), in adopting the two-part harmless error test for the failure to give a multiple acts instruction, the court in *State v. Hill*, 271 Kan. 929, 26 P.3d 1267 (2001), was seeking to avoid automatic reversal and develop "an analytical pattern to distinguish two subsets of multiple acts cases, those that truly required reversal because of a greater probability of lack of unanimity and those that did not." Beier, 44 Washburn L.J. at 304. Justice Beier concluded, however, that "[a]lthough [*Hill*] successfully rejected structural error, it fell far short of its second goal." 44 Washburn L.J. at 304.

The majority's holding today also falls short of that goal. Although the opinion purports to distinguish between cases that truly require reversal and those that do not, in reality, there will be no cases in which the *sua sponte* failure to give a unanimity instruction will not be reversible error.

This brings me to the enormous problems created by what is not said in the majority opinion. There are no exceptions or restrictions in the new rules enunciated by the majority. Such omissions place an impossible burden on trial courts and prosecutors in the trial of cases where multiple indistinguishable acts of sexual abuse of young children are at the heart of the evidence.

The problem was clearly enunciated in then Judge Beier's dissent in *State v. Arculeo*, 29 Kan. App. 2d 962, 974-75, 36 P.3d 305 (2001), wherein she stated in part:

"The case at bar demonstrates the difficulty of requiring a specific election or jury agreement where the evidence shows repeated sexual abuse of a young child over a long period of time. M.M.'s description of the alleged abuse offered no distinguishing characteristics identifying any separate and distinct incidents of abuse. Rather, the abuse 'result[ed] in an amalgamation of the crimes in the child's mind'; thus, 'the child's testimony [was] reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis.' *People v. Luna*, 204 Cal. App. 3d 726, 748, 250 Cal. Rptr. 878 (1988).

"Arculeo's due process right to a reasonable opportunity to defend against the charges was not violated. The sole issue was credibility. The generic nature of the evidence did not raise a question as to the sufficiency of that evidence. While the jury was not provided any evidence as to the frequency of the alleged crimes, *e.g.*, once a month for 4 months, none was necessary because the appellant was charged with only one count of aggravated criminal sodomy and one count of aggravated indecent liberties with a child. Moreover, M.M. gave sufficiently specific evidence of the sexual acts. The jury could have reasonably concluded from M.M.'s testimony that his account could have come only from personal experience.

"Furthermore, Arculeo's right to jury unanimity was not endangered. Although the evidence indicated that the incidents of sexual acts occurred more than the one time charged, the evidence in its entirety offered no possibility of jury disagreement regarding Arculeo's commission of any of these acts. The only issue before the jury was the credibility of M.M.'s account of the repetitive sexual offenses alleged. By the jury's rejection of Arculeo's general denial, the appellant has his unanimous jury verdict."

Justice Beier elaborated on the problem in *Lurching Toward the Light: Alternative Means and Multiple Acts Law in Kansas*. She stated in part:

" 'A strict elect-or-instruct rule is inappropriate for the truly generic evidence child abuse case. Some exception is necessary to ensure that perpetrators of the most egregious violations upon the most vulnerable of our children are punished. Given the absence of a continuing offense covering child sexual abuse in our criminal code and the inability of the youngest and most traumatized children to recite specifics of the circumstances surrounding the abuse they have suffered, the rule must be relaxed when credibility is the only genuine issue. It is simply impossible for the prosecutor to elect which among multiple indistinguishable acts he or she relies upon for conviction, and it is likewise impossible for jurors to select one from a string of undifferentiated incidents to arrive at a verdict. Rigid adherence to the elect-or-instruct rule would disable or derail prosecution alto-

gether, removing from the reach of the law those whose depredations were so frequent or so long-term or so aimed at the inarticulate that generic testimony is all that can be marshaled against them.' " Beier, 44 Washburn L.J. at 324 (quoting *Arculeo*, 29 Kan. App. 2d at 988).

I have concerns with Justice Beier's proposed solution, which she stated as follows:

"Second, for offenses that remain single-act crimes, the courts should adopt a second common law rule to make room for generic evidence cases. If one count is filed for more than one act, jurors would have to be instructed that, to convict on that count, they must unanimously agree the defendant committed *all* of the alleged acts *or any one* of them. I described this approach in my *Arculeo* concurrence, citing an Alabama case:

'The Alabama court held that, because the statutory scheme at issue did not allow for charging of a continuing offense covering child sexual abuse, a situation Kansas faces as well, see [*State v. Wellborn*, 27 Kan. App. 2d 393, 395 (2000)], the strict elect-or-instruct rule must be modified:

" 'When there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim." ' [*R.L.G. Jr., v. State*, 712 So. 2d 348, 361 (Ala. Crim. App. 1997)] (quoting *People v. Jones*, 51 Cal. 3d 294, 322, 270 Ca. Rptr. 611, 792 P.2d 643 [1990])." 44 Washburn L.J. at 323-24.

By way of illustration of the problem in such approach, let us assume a 4-year-old child testifies the defendant sexually abused her "lots and lots of times." The child's testimony speaks of multiple acts over a long period of time but provides no details from which specific incidents could be differentiated.

PIK Crim. 3d 68.09B states the following pattern instruction:

"The State claims distinct multiple acts which each could separately constitute the crime of _____. In order for the defendant to be found guilty of _____, you must unanimously agree upon the same underlying act."

How could that instruction be meaningfully modified to fit my hypothetical? How many times is lots and lots: 5? 10? 15? 20? more? What purpose would be served by instructing the jury it could convict the defendant if it found the defendant committed all the alleged acts or any one of them? Would the result of this new procedure be to pressure prosecutors to have the child victim

testify to some detail that would differentiate one act? If the child victim says she remembered one time when the defendant smelled bad, should the State be required to elect that the charged crime was the incident where the defendant smelled bad? How would such a requirement serve any legitimate purpose in the trial?

In the generic evidence cases with general denials, the "elect or instruct" requirement breaks down and no election or instruction should be required.

In summary, I have no major problem with the result reached in this case. As previously noted, I believe the majority's holding as stated in Syllabus ¶ 5 and in the opinion is unduly restrictive and will have the effect of rendering reversible all cases involving multiple acts in which the trial court failed to give a unanimity instruction *sua sponte*. Additionally, exceptions have to be made for the generic evidence child abuse cases for the well-stated reasons set forth in Justice Beier's *Lurching toward the Light*, previously cited herein.

Taking the attitude that the court can sort those problems out when appeals from those cases come before us is most inappropriate. The majority opinion will unnecessarily create massive problems. As prosecutors and trial judges struggle with how to try the generic multiple acts of sexual abuse of children cases under the new rules, errors will be made. Perpetrators of these heinous crimes may go free. The trial of cases involving the sexual abuse of children is an extremely traumatic event for the child victims and their families. A retrial months or years after the original trial can be disastrous for the children and their families trying to put the horror behind them and get on with their lives. I believe the majority opinion establishes bad law in what is said and not said, all as is previously discussed.

DAVIS and LUCKERT, JJ., join in the foregoing concurring opinion.