NOT DESIGNATED FOR PUBLICATION

No. 120,501

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DION TRENT SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed August 9, 2019.
Affirmed.

*Chris Biggs*, of Knopp and Biggs, P.A., of Manhattan, for appellant.

*Barry K. Disney*, senior deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

PER CURIAM: Dion Trent Smith appeals his jury conviction of aggravated battery. He contends the district court erred in failing to give a unanimity instruction and the State failed to present sufficient evidence to convict him. Finding no error, we affirm.

*Factual and Procedural Background*

Joshua Cade Patton—the victim here—Smith, and a group of young men went out drinking together in Manhattan, Kansas bars. The group left the bars around 2 a.m. and

1

went to an apartment that belonged to Lake Deam. While there, Smith set his pistol on a table. Later, Smith could not find the pistol and went "berserk" looking for it. Smith accused Patton of taking the pistol but Patton denied knowing anything about it. While in the parking lot of the apartment complex, Smith and Patton began to fight.

Smith admits that he hit Patton once in the mouth. Patton then ran from the parking lot trying to escape from Smith. But Smith and two friends jumped into a vehicle, chased Patton down, and forced him into the vehicle. They took Patton back to the parking lot where Smith admits that he struck Patton twice more. Then, according to Smith, he hit Patton while Patton was still sitting in the vehicle in that parking lot. Around that time, a person came out of his apartment, yelled that he would call the police, and apparently did so. Out of fear of getting in trouble, the men jumped into another vehicle to flee the scene. One of Smith's friends then made Patton get into the vehicle as well. Smith hit Patton yet again. According to Smith, that was the last punch he threw.

Together, the men drove to Jeryl Denton's house, still in search of the gun. After leaving Denton's house, Smith kicked Patton out of the vehicle, leaving him on the side of the road. Smith denied hitting Patton as he kicked him out of the car. But one of the passengers in the car testified that Smith "fought" Patton when he pulled him out of the car, even though "the first fight at the apartments [was] more of a fight than that one."

When police arrived at the apartment around 4:30 a.m., the fight was over. They found blood on and inside a car and blood on the ground of the parking lot where the fight had apparently occurred. Police found blood all over Patton's car, including blood on the passenger seat, on the grill, and on the windshield. The blood in the parking lot was enough to have pooled in various places. Police also noticed a bloody trail between Patton's car and the door of Deam's apartment door.

2

Police contacted Smith as he was walking up the steps to return to Deam's apartment. Patton was no longer at the scene of the fight or in the apartment. Instead, an officer dispatched to another location after someone reported a male knocking on doors, yelling obscenities, and crying, found Patton doing so 30 minutes later. The officer had Patton taken to the hospital in an ambulance to tend to his wounds.

Patton's wounds were extensive and included damage to his head and face. Patton's head was split in two places and required 16 staples. Patton's right orbital bone was broken and he required six stitches under his left eye, which caused scarring. Patton's mouth required 13 sutures from where his teeth had punctured both his upper and lower lips. Patton's nose required four stitches and reconstructive surgery after the skin of his nose split, the bones in his nose broke, and his septum split.

The State charged Smith with aggravated battery. At trial, the State presented testimony from four of the five men who went to Deam's apartment before the fight broke out:  Patton, Deam, Denton, and Cooper Tanner. Patton, however, had little recollection of the evening—he remembered only going to Manhattan and then waking up in the hospital. Denton had left the apartment before any physical altercation began. Deam and Tanner recounted what they could remember of the evening and the parts of the fight they witnessed. But it is unclear whether Deam saw the initial altercation in the parking lot. He did, however, see the injuries to Patton's face—the aftermath of the fight. The State also called one of the officers who responded to Deam's apartment, the police officer who found Patton, and the detective assigned to this case.

The State also submitted exhibits in the form of photos, videos, and statements. The photos showed Deam's apartment, Patton's injuries, and blood in the parking lot, on and in Patton's car, and leading to Deam's apartment. The video showed body cam footage of an officer's interview with Smith while at Deam's apartment and a later

3

interview with Smith and the assigned detective. The written statements were from Smith, Deam, and Tanner. Smith's written statement was read into the record at trial:

> "Morning of February 23rd, 2018, I was at a friend's house. While I was playing Xbox [at] 4:00 a.m. [Patton] asked to handle my firearm so I unloaded it and handed it to him, and when my match was finished he was gone [] smoking, so I asked where my pistol was and he said he didn't know, even though he was the last to touch it. So I pressed the issue and he kept saying I don't . . . know. So I punched him [with my] left hand[,] less dominant[,] and asked him. He said [the same] thing, so I just started hitting him. I was way too drunk to be trying to fight. I lose control. The picture I was show[n] looks to prove my point. Where I'm from what I did was taking it easy. But this is a different place, time, things are much more enforced here than other places I've been. But seeing as there is no way to prove he did or did not, but I would like to apologize to him for losing it. I myself believe I took it way too far. . . . I don't know . . . out of his innocence I will do everything in my power to help him with things, maybe even some fines, bills. If it wasn't him that stole my gun I want to deeply apologize to him, his wife and their baby for the trouble I caused them and the pain they went through."

Smith testified. Although he admitted hitting Patton up to five times, he denied causing Patton's extensive injuries. Smith emphasized that he had used only his left hand —his nondominant hand—while hitting Patton in his face. Smith argued that at least some of Patton's injuries must have been caused by something else, such as his falling on the ice or getting hit by a vehicle.

The jury found Smith guilty of the lesser included offense of aggravated battery by which great bodily harm or disfigurement could be inflicted. With a criminal history score I, Smith was sentenced to 13 months in prison but was granted 24 months' probation. Smith was also ordered to pay $10,781.22 in restitution. Smith appeals.

*Did the District Court Commit Clear Error by Failing to Give a Nonrequested Unanimity Instruction?*

Smith first argues that the district court erred by not giving a unanimity instruction since several different acts could support the charge of aggravated battery. Smith concedes that he did not request the unanimity instruction at trial. Because Smith did not request a unanimity instruction or object to its absence at trial, he has the burden of showing clear error. See K.S.A. 2018 Supp. 22-3414(3). To establish clear error, Smith must firmly convince us "'that the giving of the instruction would have made a difference in the verdict.'" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

A defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421; *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014).

> "When a case involves multiple acts, any one of which could constitute the crime charged, the jury must be unanimous in finding which specific act constitutes the crime. See *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014). To ensure jury unanimity in these cases (known as multiple acts cases), the State must elect which act it is relying upon for the charge, or the court must instruct the jury that it must unanimously agree on the specific act constituting the crime charged. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014); *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007)." *State v. Hale*, No. 118,152, 2018 WL 4939423, at *8 (Kan. App. 2018) (unpublished opinion).

When analyzing a jury unanimity issue, this court follows a three-part test. *State v. De La Torre*, 300 Kan. 591, 596, 331 P.3d 815 (2014). First, we determine whether this is a multiple acts case. 300 Kan. at 596. "The threshold question is whether jurors heard evidence of multiple acts, each of which could have supported conviction on a charged crime." 300 Kan. at 596 (citing *State v. King*, 299 Kan. 372, Syl. ¶ 1, 323 P.3d 1277 [2014]). This is a question of law over which we exercise unlimited review. *Santos-Vega*,

299 Kan. at 18. If we find this is not a multiple acts case because the defendant's conduct was unitary, then we end our analysis and affirm the district court. See *Voyles*, 284 Kan. at 244. But if we find that multiple acts were involved, we must then decide whether error was committed either because the district court failed to instruct the jury to agree on the specific act for each charge or because the State failed to inform the jury which act to rely on during its deliberations. *King*, 297 Kan. at 979. Finally, if we find error, we determine whether the error was reversible or harmless. 297 Kan. at 979-80.

The complaint against Smith stated: "That on or about the 23rd day of February, 2018, in Riley County, Kansas, Dion Trent Smith, did unlawfully, feloniously, and knowingly cause great bodily harm or disfigurement to another person, Joshua Cade [] Patton. In violation of K.S.A. 21-5413(b)(1)(A), Aggravated Battery, a severity level 4 person felony." Smith argues that the following distinct acts could support this charge:

- One incident in the parking lot;
- another back at the apartment;
- another at a car as Patton began to leave;
- another in the car while transporting Patton; and
- another outside the car when Smith removed Patton from it.

Our Supreme Court has laid out four factors to assist our analysis about whether conduct involves multiple acts:

> "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.' [Citation omitted.]" *State v. Williams*, 303 Kan. 750, 755, 368 P.3d 1065 (2016).

Both parties agree that the criminal acts occurred each time Smith hit Patton. Smith asserts that the first two factors "clearly" weigh in favor of finding this a multiple acts case. He argues that under the third factor, an intervening act occurred when Smith took Patton to a second and third place before hitting him again. Smith also claims that as it relates to the fourth factor, a "separate 'impetus' occurred after the gun was [still] not located at . . . the second house." Under the first factor, the proximity in time, we find that the acts occurred near the same time. As the State points out, the police arrived at the parking lot of Deam's apartment by 4:30 a.m. and found Patton at 4:50 a.m.

As to the second factor, proximity of location, we find that although the acts did not occur all in one place, they did occur near each other. Most of the violence occurred in the parking lot of Deam's apartment building. By the time police arrived, the fight was over and Patton had already been left in a different neighborhood. Patton tried to flee from Smith but made it only a short distance on foot before Smith ordered Patton into the car. Then, Smith took Patton back to the parking lot before hitting him again. Although Patton was then taken to another house—Denton's house—the record does not show that he was hit there. Testimony that Smith hit Patton again while kicking him out of the car is disputed. What is clear is that Smith denied hitting Patton beyond the parking lot or the very short distance Patton made it from the parking lot when he first tried running from Smith.

The record reflects contradictory testimony as to whether Patton was hit while in the apartment. Smith's testimony does not clearly establish whether he first hit Patton while inside or outside the apartment. But Deam and Tanner both testified that Smith's first punch was thrown outside the apartment, in the parking lot. The evidence thus shows that the acts occurred in one location—the parking lot of Deam's apartment. The farthest Patton made it from the parking lot was just down the road before Smith hit him again. We find that under the second factor, the acts occurred at or near the same location.

7

As to the third and fourth factors, the record does not show any intervening event or fresh impulse motivating Smith's new conduct. Instead, Smith was angered by not finding his pistol. He continued to hit Patton as a response to that anger, under an assumption that Patton stole the gun or knew where it was. We find that Smith's conduct was unitary so no unanimity instruction was warranted. See *Voyles*, 284 Kan. at 244. The district court's failure to give a unanimity instruction was certainly not clearly erroneous.

*Does Sufficient Evidence Support Smith's Conviction for Aggravated Burglary?*

Smith next argues that the State failed to support his conviction by sufficient evidence. In essence, Smith argues that the State failed to show that the acts Smith admitted to could have caused great bodily harm. Instead, Smith asserts that Patton himself or another assailant likely caused at least some of Patton's injuries.

When, as here, a defendant challenges the sufficiency of the evidence in a criminal case, our standard of review is whether, after reviewing the evidence in a light most favorable to the State, we are convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, we do not reweigh evidence, resolve evidentiary conflicts, or evaluate the credibility of witnesses. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). Only in rare cases in which the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt will we reverse a guilty verdict. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

The jury convicted Smith of the lesser included offense of aggravated battery by which great bodily harm or disfigurement could be inflicted.

Smith concedes that he confronted Patton and accused him of stealing his gun. Smith also concedes that he hit Patton five times. Smith challenges only the State's evidence that he caused "great bodily harm."

8

We find that the evidence was sufficient to establish that Smith battered Patton in a manner in which great bodily harm or disfigurement could be inflicted. The State presented testimony that Smith and Patton fought in the parking lot of Deam's apartment. The State also presented testimonial and photo evidence of the blood that resulted from the fight in the parking lot. The jury heard Smith's statement to police in which he admitted losing control and apologized for the harm he caused Patton and his family. Deam testified that Smith went "berserk" when he first thought his gun was missing and that Smith attacked Patton as a result of that frustration and anger. Police found Patton shortly after the fight ended and saw Patton's severe injuries. The evidence, viewed in a light most favorable to the State, provides sufficient evidence to support the jury's verdict. As a result, we affirm his conviction.