IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,563

In the Care and Treatment of
KODI A. THOMAS.

SYLLABUS BY THE COURT

1.

An appellate court will not overlook the lack of an objection at trial as required by K.S.A. 60-404 when an alleged Confrontation Clause violation is raised, even if the appellant argues review is necessary to serve the ends of justice or to prevent the denial of the defendant's right to a fair trial.

2.

K.S.A. 2014 Supp. 60-251(d)(2) provides that a court may consider a jury instruction error even if it was not preserved by an objection made with the district court in the manner provided by law, if the giving or failure to give the instruction is clearly erroneous and the error affects substantial rights.

3.

An appellate court uses a two-step process to determine whether a challenged jury instruction is clearly erroneous. First, the court must determine whether there was any error at all by considering whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict had the instruction error not occurred. The party claiming error has the burden to prove the degree of prejudice necessary for reversal.

1

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 8, 2013. Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed May 1, 2015. Judgment of the Court of Appeals affirming the district court on the issues subject to our grant of review is affirmed. Judgment of the district court on those issues is affirmed.

*Elbridge Griffy IV*, of Lawrence, argued the cause and was on the brief for appellant.

*Natalie Chalmers*, assistant solicitor general, of Office of Kansas Attorney General, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This appeal arises after a civil jury declared Kodi A. Thomas to be a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq*. Thomas claims the district court erred by: (1) permitting the State's experts to testify about hearsay statements contained within his treatment records; and (2) improperly instructing on the State's burden of proof. We affirm because the hearsay challenge was not preserved for appellate review and the jury instruction deviation from our pattern instructions does not require reversal under our standard of review.

## FACTUAL AND PROCEDURAL BACKGROUND

Thomas was convicted in 1996 of attempted rape and aggravated burglary. Near the end of his prison sentence, the State sought to involuntarily commit him under the KSVPA. Thomas stipulated there was probable cause, so he was committed to Larned State Hospital for evaluation. A jury later found Thomas to be a sexually violent predator subject to civil commitment. Thomas timely appealed.

2

At the Court of Appeals, Thomas raised three issues: (1) sufficiency of the evidence; (2) whether the district court violated his due process right to confront witnesses under the Confrontation Clause of the Sixth Amendment to the United States Constitution when it allowed the State's expert witnesses to give opinions based on hearsay; and (3) whether the district court violated his due process rights by giving an erroneous reasonable doubt instruction. Finding no error within its standard of review, the panel unanimously affirmed. *In re Care & Treatment of Thomas*, No. 108,563, 2013 WL 5976064, at *8 (Kan. App. 2013) (unpublished opinion).

Thomas petitioned this court for review of his second and third challenges regarding the Confrontation Clause and reasonable doubt instruction. This court granted review on these issues. Jurisdiction is proper. K.S.A. 2014 Supp. 60-2101(b) (review of Court of Appeals opinion upon petition for review). Additional facts will be presented when pertinent.

CONFRONTATION CLAUSE CHALLENGE NOT PRESERVED

At the involuntary commitment trial, the State presented testimony from two psychologists: Dr. Janet Kohrs, who performed a prerelease evaluation for the Department of Corrections; and Dr. Gregory Shannon, who assessed Thomas during his Larned commitment for evaluation after the probable cause determination. Based on speaking to Thomas and the records available to her, Kohrs testified she believed Thomas would engage in sexually violent acts in the future and would not be able to control his behavior outside of a structured environment.

Without objection, Kohrs explained her opinions by reading verbatim from disciplinary reports maintained by the Department of Corrections that chronicled Thomas' various sexual infractions while in prison. Also without objection, she testified

3

the records she received from 2006 when Thomas was transferred for a period of time to Larned for treatment of symptoms of paranoid schizophrenia reflected that Thomas had been warned by staff for openly masturbating in his room and staring at women's buttocks and that Thomas persisted in this conduct despite numerous attempts at redirection. Following Kohrs' cross-examination, the State moved on redirect to admit Kohrs' written report, which contained this same information. Without objection, the report was admitted into evidence.

The State's second medical expert, Shannon, also testified that Thomas posed a high risk of reoffending if released. He said Thomas' mental abnormalities and personality disorder—namely cognitive difficulties, schizophrenia, and voyeurism—impaired Thomas' ability to control his dangerous behavior. He said Thomas' propensity to commit acts of sexual violence posed a menace to others' health and safety.

During Shannon's testimony, the State asked if he was aware of incidents in which Thomas engaged in exhibitionism while at Larned. Shannon responded that he had reviewed about half a dozen nursing notes chronicling such events. These nursing notes discussed the same incidents of misconduct in which Thomas openly masturbated in his room and stared at women's buttocks. When the State asked Shannon to testify about the first note, Thomas objected on confrontation grounds, arguing that "[t]he individual that made this record, the statements, are not available and we can't cross-examine them . . . ." In response, the State argued the notes were not hearsay because it was not trying to prove the truth of the matters stated but simply asking about information Shannon had received that he later relied on in forming his opinions.

Thomas responded that "I guess my argument there would be whether there has been appropriate foundation that the opinion that this doctor relied on is reasonably relied on and regularly relied on in the field specialty." The district judge asked the State to

4

"flesh out that foundation" before proceeding further, so Shannon explained how information about previous hospitalization was useful in making a diagnosis and that he regularly relies on such information to do so, as do others in his field of practice. Shannon then read the notes verbatim into evidence without further objection. Shannon's report, which extensively quoted from the nursing notes, was admitted into evidence after Thomas completed Shannon's cross-examination without objection.

The Court of Appeals held that Thomas failed to preserve the Confrontation Clause issue for appeal. *In re Care & Treatment of Thomas*, 2013 WL 5976064, at *3-5. The panel observed the trial court never actually ruled on Thomas' objection to the nursing notes or made factual findings as to whether the notes were testimonial in nature and that Thomas never objected to the lack of factual findings. This was significant, the panel observed, because appellate courts do not make factual findings and the burden is on the party making a claim to designate a sufficient record for appeal. 2013 WL 5976064, at *4.

The panel further noted Thomas failed to raise a timely objection to the nursing notes' admission as required by K.S.A. 60-404 because Thomas modified his objection to focus on foundation, to which the State provided evidence in response; and then Thomas failed to raise further objection before Shannon began reading the notes into evidence. The panel also observed that Thomas failed to object to the admission of Shannon's report, which contained the quoted material read into the record. Finally, the panel commented that Thomas did not object to Kohrs' similar trial testimony, "waiving or abandoning the same admissibility issue as it relates to Dr. Kohrs." 2013 WL 5976064, at *5.

In his petition for review, Thomas claims first that he had filed a pretrial motion to exclude this testimony that was never ruled upon. But no such motion is in the record on

appeal, and we can find no evidence such a motion was filed. It was Thomas' burden to establish an adequate record. See *State v. McCullough*, 293 Kan. 970, 999, 270 P.3d 1142 (2012) (party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error). Thomas further argues he contemporaneously objected to the nursing notes, but he concedes his objection was not renewed or clarified after Shannon provided the additional foundation requested.

We agree with the panel's reasoning and hold Thomas failed to preserve this issue for appeal under K.S.A. 60-404, which provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence *unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of the objection*." (Emphasis added.)

In this case, Thomas initially asserted an objection on confrontation grounds; but after the State responded, the colloquy focused on foundation and the district court instructed the State to "try and flesh out that foundation before you proceed." After that, Shannon gave a more detailed explanation about the files available to him and then read from the nursing notes without further objection or a request for a continuing objection. Shortly thereafter, Shannon's report was admitted into evidence without objection and its contents detailed the same nursing notes at issue in this appeal.

As an alternative argument, Thomas contends he should be allowed to raise his constitutional claim for the first time on appeal. But this court has explained that appellants asserting Confrontation Clause challenges may not circumvent K.S.A. 60-404, otherwise the exceptions would devour the statutory rule. See *State v. Williams*, 299 Kan. 509, 548-50, 324 P.3d 1078 (2014) (appellate court will not overlook lack of an objection

6

as required by K.S.A. 60-404 even if appellant argues appellate review is necessary to serve the ends of justice or prevent the denial of defendant's right to a fair trial; citing other cases). We again reject this backdoor approach.

INSTRUCTIONAL ERROR HARMLESS

Thomas argues next that the reasonable doubt instruction erroneously informed the jury it could find him to be a sexual predator without finding proof beyond a reasonable doubt of each required element from the statute.

*Standard of Review*

KSVPA proceedings are civil in nature. See *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 19, 21, 287 P.3d 855 (2012). K.S.A. 2014 Supp. 60-251(d)(2) provides that a court may consider an error in the instructions if it was not preserved "if the giving or failure to give the instruction is clearly erroneous and the error affects substantial rights." See also K.S.A. 2014 Supp. 60-261 (harmless error). In Thomas' case, it is agreed the instruction challenge was not preserved, so the clearly erroneous standard applies.

An appellate court uses a two-step process to determine whether a challenged jury instruction is clearly erroneous. First, the court determines if there was error by considering whether the instruction was legally and factually appropriate, employing an unlimited review of the entire record. If the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict had the instruction error not occurred. The party claiming error has the burden to prove the degree of prejudice necessary for reversal. See *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013).

*Discussion*

This issue concerns the KSVPA's standard of proof as established by K.S.A. 2014 Supp. 59-29a07(a), which requires that "[t]he court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." Drawing from that statute, our pattern instructions recommend giving the following burden of proof instruction in sexually violent predator proceedings:

> "The State has the burden to prove its claim in this proceeding. The test you must use is this:  If you have a reasonable doubt as to the truth of *any of* the claims made by the State, you must find for the respondent. If you have no reasonable doubt as to the truth of any of the claims made by the State, you should find for the State." (Emphasis added.) PIK Civ. 4th 130.22.

In Thomas' case, the State proposed a modified instruction that became Jury Instruction No. 4. And in the process of drafting that instruction, the State omitted the above italicized words "any of" and included a few other minor phrasing differences not important here. The district court accepted the State's proposed instruction without comment, and Thomas did not object.

Jury Instruction No. 4 was modified to state:

> "The State has the burden to prove its claim in this proceeding. The test you must use is this:  *If you have reasonable doubt as to the truth of the claims required to be proved by the State*, you must find for the Respondent. *If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find for the State*." (Emphasis added.)

After Jury Instruction No. 4, the district court gave the following separate instruction:

"The State alleges the respondent is a sexually violent predator. The respondent denies the allegation.

"To establish this charge, *each of the following claims must be proved*:

"1.  That the respondent has been convicted of attempted rape, a sexually violent offense;

"2.  That the respondent suffers from a mental abnormality or personality disorder which makes the respondent likely to engage in repeat acts of sexual violence; and

"3.  That the respondent's mental abnormality or personality disorder makes it seriously difficult for him to control his dangerous behavior." (Emphasis added.)

Although Thomas did not object at trial to giving this instruction, he argues now on appeal that the phrase "if you have reasonable doubt as to the truth of the claims required to be proved by the State" conveyed to the jury that it could not find in his favor unless the jury harbored a reasonable doubt as to all the elements of the State's case. He contends the word "claims" is plural, therefore the "reasonable doubt" must relate to all the State's claims. He further maintains the phrase requiring the jury to find for the State if it had "no reasonable doubt as to the truth of any of the claims required to be proved" misstated the State's burden of proof and permitted a finding for the State if the jury believed the State had proved just one element of its case beyond a reasonable doubt.

9

It is not difficult to conclude that Jury Instruction No. 4 as modified by the State unnecessarily injected some confusion into the jury's deliberative process as the Court of Appeals panel noted. See *In re Care & Treatment of Thomas*, 2013 WL 5976064, at *7 (questioning significance of difference between the PIK language and the instruction requiring verdict for defendant if jury had reasonable doubt as to the "truth of the claims" the State was required to prove). Variance from the PIK instruction is not dispositive, but the omission of "any of" in this context was substantive enough to justify the assumption of error for purposes of appellate review.

The instruction at issue differs from the one challenged in *State v. Herbel*, 296 Kan. 1101, 299 P.3d 292 (2013), a case both the panel and the State cite as supporting the appropriateness of Jury Instruction No. 4. In *Herbel*, we considered whether substituting the word "any" in an instruction that deviated from the then-current version of PIK Crim. 3d 52.02 was legally appropriate. 296 Kan. at 1120 (substituting "any of the claims" for PIK's "each of the claims"). The *Herbel* court held that while "each" was preferable, use of "any" in that context was not an incorrect statement of law for three reasons. First, the "any/any" instruction was identical to the previous version of PIK Crim. 3d 52.02, which had been approved repeatedly in our caselaw. 296 Kan. at 1124. Second, the word "any" was used consistently, thereby precluding the adverse meaning feared by defendant, which would require the court to focus on the word's use in isolation while ignoring the context in which it was used. 296 Kan. at 1123 (citing *State v. Beck*, 32 Kan. App. 2d 784, 787, 88 P.3d 1233, *rev. denied* 278 Kan. 847 [2004]). Third, there were separate instructions mitigating any confusion because they itemized the elements of the crimes and recited that the State must prove "each" such element to establish those charges. *Herbel*, 296 Kan. at 1123 (citing *Beck*, 32 Kan. App. 2d at 787-88).

Two of the *Herbel* rationales do not exist for Jury Instruction No. 4 because the language used lacks the same pedigree of prior caselaw approval and removal of the

10

phrase "any of" from the first sentence deprives the instruction of the consistent usage the *Herbel* court relied upon. The instruction should have clarified that the State was required to prove each element of its case that Thomas was a sexually violent predator. That said, we also recognize Jury Instruction No. 4 is not as blatantly erroneous as the instruction in *Miller v. State*, 298 Kan. 921, 935-38, 318 P.3d 155 (2014), which cut off entirely the remedial effect of the elements instruction—the third *Herbel* rationale. See *Miller*, 298 Kan. at 937 (noting instruction literally misstated burden of proof, so no other instruction could have cured the error). In *Miller*, the instructional error corrupted the entire verdict because application of the instruction plainly misstated the State's burden, so a structural error analysis was applied. 298 Kan. at 938. But we do not have an instructional error comparable to *Miller* in Thomas' case.

We consider then under K.S.A. 2014 Supp. 60-251(d)(2) whether there was clear error, *i.e.*, whether we are firmly convinced the jury would have reached a different verdict had the instruction error not occurred. We hold that clear error is not shown because the elements instruction mitigated any ambiguity in the reasonable doubt instruction; counsel's arguments further confirmed the State was required to prove each element beyond a reasonable doubt; and the evidence as to the issues in dispute was both uncontroverted and overwhelmingly in the State's favor. See *State v. Cruz*, 297 Kan. 1048, 1069, 307 P.3d 199 (2013) (making clear error determination by reviewing impact of erroneous instruction "'in light of the entire record and additional considerations'").

We agree with the panel that "the State properly recognized its three-part burden of proof and accurately conveyed it to the jury." *In re Care & Treatment of Thomas*, 2013 WL 5976064, at *8. In closing arguments, the State explained the elements it had to prove after noting the stipulation that Thomas had been convicted of a sexually violent offense. It outlined the State's expert medical opinion evidence demonstrating that Thomas suffered from a mental abnormality or personality disorder and argued also that

11

Thomas' counsel had essentially conceded that point as well. Then, the State's counsel said, "[S]o let's talk about why we are here," noting the jury needed "to determine the last two parts of [the elements]. Is he likely to re-offend and does he have a serious difficulty controlling himself." And the State addressed the evidence proving those elements.

Similarly, Thomas' counsel explained during closing that "[w]hat the State needs to do is prove to you beyond a reasonable doubt that [it] met *the three elements of this offense*." (Emphasis added.) Counsel then conceded the first element, saying, "We never made any representation that Mr. Thomas didn't have some very serious convictions in his background, and it became obvious during the opening comments of the State that that was, in fact, true." Defense counsel further conceded, "I will agree that Mr. Thomas' behavior indicates he has a lot of problems conforming to norms, obeying rules, he is mildly mentally retarded, is on psychotropic medicines that would drop a horse, and is schizophrenic." As to the remaining element of proof, counsel then staked out his argument that "there wasn't any evidence put before you today that Mr. Thomas . . . has any type of predatory sexual behavior." Any chance for ambiguity arising from Jury Instruction No. 4 on reasonable doubt was resolved by the specific explanations provided by both counsel in closing arguments, which clarified and reinforced what the jury's task was in this case.

Finally, the parties' stipulation and the uncontroverted testimony of Drs. Kohrs and Shannon supplied a substantial case in the State's favor under the KSVPA. See K.S.A. 2014 Supp. 59-29a02(a) (defining "[s]exually violent predator"). Specifically, the parties stipulated Thomas was previously convicted of a sexually violent offense. Both psychologists diagnosed Thomas with paranoid schizophrenia and antisocial personality disorder, borderline intellectual functioning, and substance abuse. And Kohrs and Shannon both administered actuarial risk assessments that indicated Thomas posed a high risk of sexual recidivism. Kohrs testified that Thomas would engage in sexually violent

acts in the future and would not be able to control his behavior outside a structured environment. Likewise Shannon testified that Thomas' mental abnormalities and personality disorder (cognitive difficulties, schizophrenia, and voyeurism) impaired his ability to control dangerous behavior to a degree that posed a menace to others' health and safety.

For these reasons, this court is not firmly convinced the jury would have reached a different verdict had the deviation from the pattern instruction not occurred.

Affirmed.