NOT DESIGNATED FOR PUBLICATION

No. 118,292

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREA J. ROSS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed October 26, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER and SCHROEDER, JJ.

PER CURIAM: Andrea J. Ross appeals from a theft conviction. After the jury convicted her, the district court sentenced Ross to eleven months but granted her probation. On appeal, Ross contends that the district court erred in failing to submit a unanimity instruction to the jury. Based on our review of the record on appeal—including a video recording of the incident at a Kohl's department store—we find that Ross' conduct was continuous and guided by a single impulse. We also find that the term "cosmetics" used by the State in the complaint was sufficient to include the perfume tester bottle taken by Ross. Thus, we affirm Ross' conviction.

1

On May 24, 2016, the State filed a criminal complaint against Ross alleging that she violated K.S.A. 2015 Supp. 21-5801(a)(1) and (b)(6), Theft After Prior Conviction. The complaint alleged that on March 9, 2016, Ross unlawfully obtained or exerted unauthorized control over "clothing, jewelry and cosmetics with the intent to permanently deprive the owner(s), to wit:  Kohl's, of the possession, use or benefit of said property . . . ." The complaint also alleged that Ross had been convicted of theft on two previous occasions in Wichita Municipal Court.

The district court held a three-day jury trial, which started on May 22, 2017. At trial, the State presented the testimony of two witnesses—Dishank Patel, a loss prevention supervisor for Kohl's, and Wichita Police Officer Darlene Zerr. The State also admitted three exhibits into evidence, including a recording of the store surveillance video. Moreover, the video—which corroborates Patel's testimony—was shown to the jury.

Patel testified that while working at the Kohl's store on March 9, 2016, he noticed two females looking at merchandise "with no regards" as to price. According to Patel, he had been trained by Kohl's to look for such behavior as a possible indication of shoplifting. One of the women was later identified to be Ross and the other as her sister Kristian. In addition, Kristian's young son was with the women in the store.

Patel testified that as he continued to watch the women and child, he observed Ross and her sister select several pieces of clothing from the juniors department without looking at the size or price. After seeing this, Patel went to the security booth to watch Ross and her sister on the store's security monitors. While Patel walked back to the security booth, the women evidently entered the jewelry department. When Patel next

2

saw them on the monitors, they were in the cosmetics department and Ross was carrying a jewelry box.

According to Patel, he was again alerted to Ross' behavior while in the cosmetics department. Patel testified that Ross selected a tester bottle of perfume, "quickly [and] also selected several makeup item boxes and then put them in the shopping cart." When Ross left the cosmetics department, the tester bottle of perfume was still in her hand. Patel opined that shoplifters will commonly take tester items because they lack security tags.

Patel testified that he continued to watch as Ross, Kristian, and the child entered the misses fitting rooms. Patel saw Ross enter the fitting room with the perfume tester bottle in one hand and the jewelry box in her other hand. According to Patel, Ross and Kristian entered the same cleaned-out fitting room. After exiting the fitting room, Ross and Kristian headed to a cash register near the misses department.

Meanwhile, Patel checked the fitting room and found "an empty box hidden under clothes, and the jewelry box." Additionally, Patel found several security tags that had been removed from clothing. After Kristian paid for some—but not all—of the merchandise, Ross, Kristian, and the child made their way to the customer service desk. According to Patel, they returned "one or two items" at the customer service desk before leaving the store.

Patel observed Ross, Kristian, and the child exit the store with the shopping cart. He confronted them outside the store and escorted them to the loss prevention office to "fill out the paperwork." Patel testified that the sisters had not paid for several makeup boxes found in the shopping cart. Patel also stated that he could see the outline of the perfume tester bottle "bulging out" the front pocket of Ross' jeans. In Ross' pockets, Patel found both the perfume tester bottle and a pair of sterling silver earrings.

A Kohl's manager called the police and Officer Zerr responded. She testified that she responded to a call reporting "that [Kohl's] had two individuals in custody for shoplifting." According to Officer Zerr, Patel informed her about what he had observed and why he had detained the women. Officer Zerr then separated the sisters and spoke to each one individually.

Officer Zerr testified that Ross told her that she did not enter the Kohl's location with the intent to shoplift. Instead, she had went to the store to exchange "several clothing items" for a different size. Regarding the perfume tester bottle, Officer Zerr testified that Ross told her that "she had picked up a bottle of perfume and this was when her sister's son decided to throw a fit. Miss Ross said she put the perfume in her jeans pocket to be able to pick up the [child]."

After Officer Zerr, the State rested and Ross testified in her own defense. Ross testified that she went to Kohl's to exchange some clothing. Ross admitted that she helped her sister select makeup and perfume. However, she testified that it only took her a short period of time to select the items because she was already familiar with the products. In particular, Ross testified that she wore that brand of perfume and had done so for eight years. Ross also testified that she did not attempt to hide the perfume tester bottle and had carried it openly in the store.

According to Ross, she was able to quickly pull a sweater from the rack because it was the same as the one she was returning but simply the correct size. As such, Ross suggested that she had no reason to look at the price. Ross testified that she and her sister occupied different dressing rooms. She also testified that while in the dressing room area, her nephew "started to get restless" so she picked him up after he began "throwing a fit."

On direct examination, Ross testified that she could not remember when she placed the perfume tester bottle in her front pocket. Likewise, she denied putting the

4

earrings in her pocket, denied taking off security tags, and denied helping her sister do so. However, on cross-examination, Ross recalled that she "put [the perfume tester bottle] in [her] pocket in the fitting room when" she picked up her nephew.

After deliberation, the jury convicted Ross of one count of theft. The district court sentenced Ross to eleven months but granted her probation. Thereafter, Ross timely appealed.

ANALYSIS

On appeal, Ross contends that the district court erred because it failed to give a unanimity instruction to the jury. Ross did not request a unanimity instruction at trial. As a result, we review the district court's failure to give a unanimity instruction under a clearly erroneous standard. See *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015) ("'No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or failure to give an instruction is clearly erroneous.' [Quoting K.S.A. 2014 Supp. 22-3414(3).]").

Applying a clearly erroneous standard of review, we must analyze whether the inclusion or omission of the instruction was legally and factually appropriate. See *State v. Plummer*, 295 Kan. 156, 161-62, 283 P.3d 202 (2012). The clear error determination must review the impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015). If we determine that the district court erred, the error is reversible only if we find "that there is a '*reasonable probability* that the error *will or did affect the outcome* of the trial in light of the entire record.'" (Emphases added.) *Plummer*, 295 Kan. at 168.

Ross asserts that the State did not charge her with theft of the perfume tester bottle and "even though that act was performed in conjunction with other alleged acts of theft . . . , it became a separate act requiring a unanimity instruction because it could not legally support a finding of guilt." Ross does not deny that she took the perfume tester bottle. Instead, she asserts that the other items "had a connection to [her] sister" or that she had given "an innocent explanation for possessing the items." As such, she argues that "the jury would have returned a different verdict in the absence of the instructional error."

A unanimity instruction is required "'when the State charges one crime but relies on multiple acts to support that one crime.'" *State v. King*, 297 Kan. 955, 978, 305 P.3d 641 (2013) (quoting *State v. Sanborn*, 281 Kan. 568, 569, 132 P.3d 1277 [2006]). In the alternative, "the State must elect the particular act it relies on for conviction." 297 Kan. at 978. To determine whether multiple acts exist, first the court must ask "'whether the case truly involved multiple acts, *i.e.*, whether the defendant's actions could have given rise to multiple counts of the charged crime or whether the alleged conduct was unitary.'" 297 Kan. at 979. Second, the court must ask whether error was present. An error has occurred "'[i]f the State did not inform the jury which act to rely upon during its deliberations and the trial court did not instruct that it must be unanimous about the particular criminal act that supported the conviction.'" 297 Kan. at 979. Third, if there was error, the court must consider if that error was reversible under the clearly erroneous standard. 297 Kan. at 979.

In *King*, 297 Kan. at 982, the Kansas Supreme Court held that the district court should have given a multiple acts "unanimity" instruction. A man damaged his father's vehicles, left the property, returned 5-10 minutes later, and caused additional damage. The court used four factors in determining that a multiple acts situation existed. 297 Kan. at 981-82. These factors consider "'(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship

6

between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.'" 297 Kan. at 981 (quoting *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 [2006]). Ultimately, our Supreme Court held that multiple acts existed because there were "two 'separate incidents'" because the defendant had "'a fresh impulse to return and hit the vehicles again after leaving the first time.'" 297 Kan. at 981-82 (quoting *State v. King*, No. 99,479, 2010 WL 3488659, at *11 [Kan. App. 2010] [unpublished opinion]).

On the other hand, in *Sanborn*, 281 Kan. at 570-71, the Kansas Supreme Court found that a unanimity instruction was unnecessary when a defendant was convicted of possession of drug sale paraphernalia and possession of drug use paraphernalia. Searching the defendant's home, police had found multiple drug-related items. Our Supreme Court concluded that "[a]lthough both counts against [the defendant] included multiple items of evidence, they do not include multiple acts because the items are not factually distinct. All of the items are drug paraphernalia." 281 Kan. at 571.

Here, the record reveals that the theft of the perfume tester bottle, earrings, and clothing all occurred at the same time. Ross made a single trip to the Kohl's location and an uninterrupted chain of events led to her eventual arrest for theft. Likewise, all of the stolen items came from the same location—the Kohl's store. Moreover, there is no evidence of an event between the acts committed by Ross. While Ross did visit the dressing rooms during her time at Kohl's, the evidence establishes that she did so to remove security tags and not to take a break from her criminal activity. Furthermore, unlike *King*, there is nothing in the record to suggest that a "fresh impulse" motivated Ross' activities. Instead, Ross' course of conduct was uninterrupted and resulted from the same criminal impulse. Although there were multiple items stolen, stealing any of the items would constitute theft.

Ross also contends that she could not have been convicted of theft based on taking the perfume tester bottle. She argues that because the complaint listed "clothing, jewelry, and cosmetics" as the items stolen, she was not properly charged with taking the perfume tester bottle. Although it is true that the complaint did not explicitly list perfume, we find that the common definition of the word "cosmetics" is broad enough to include perfume.

As the State accurately points out in its brief, the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(i) (2012), defines "cosmetics" as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body . . . for cleansing, beautifying, promoting attractiveness, or altering the appearance." Included in the definition of "cosmetics" are products such as skin moisturizers, perfumes, lipsticks, eye and facial makeup preparations, and fingernail polishes. See 21 C.F.R. § 720.4(c)(4)(ii) (2018) (perfume listed as a cosmetics product). Moreover, as a practical matter, we note that the record reflects that Ross took the perfume from the cosmetics department. Consequently, we find that the blanket term "cosmetics" used in the complaint was sufficient to include perfume.

Based on our review of the record, we do not find that a unanimity instruction was legally or factually required to be given to the jury in this case. Furthermore, even if we were to find that the district court erred, we find no reasonable probability based on the overwhelming evidence in the record—including the surveillance video—that the alleged error effected the outcome of the trial. We, therefore, affirm Ross' theft conviction.

Affirmed.