NOT DESIGNATED FOR PUBLICATION

No. 120,567

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROMULO BOJORQUEZ-CARRASCO,
*Appellant*.


MEMORANDUM OPINION

Appeal from Grant District Court; CLINT B. PETERSON, judge. Opinion filed May 15, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Jessica E. Akers*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: Following a jury trial, Romulo Bojorquez-Carrasco was convicted of one count of unlawful cultivation/distribution of methamphetamine (i.e., possession with intent to distribute), a severity level 2 drug felony; one count of unlawful possession of drug paraphernalia, a severity level 5 drug felony; one count of battery against a law enforcement officer, a class A person misdemeanor; one count of interference with a law enforcement officer, a class A nonperson misdemeanor; and one count each of unlawful possession of drug paraphernalia and driving without a valid license, both class B nonperson misdemeanors. He was subsequently sentenced to 103 months in prison. Bojorquez-Carrasco now appeals, claiming that the district court erred when it failed to:

(1) give an instruction on simple possession as a lesser included offense to the charge of possession of methamphetamine with intent to distribute; and (2) give an unanimity instruction regarding the battery against a law enforcement officer charge. Finding that any error did not rise to the level of clear error we affirm Bojorquez-Carrasco's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

At approximately 10:30 a.m. on November 1, 2017, Officer Ronald Vagher and Officer-in-Training Sandra Prieto—both of the Ulysses Police Department—were driving northbound on Main Street in Ulysses, Grant County, Kansas. As they crossed San Jacinto Avenue, Officer Prieto saw Bojorquez-Carrasco driving a purple Dodge Intrepid. She knew from previous experience that Bojorquez-Carrasco did not have a valid driver's license, so she told Officer Vagher about her observation. Officer Vagher, who also had previous knowledge about the status of Bojorquez-Carrasco's driver's license, watched in his rearview mirror as the Dodge Intrepid drove westbound on San Jacinto Avenue, and he then quickly drove around the block to get behind it and initiate a traffic stop. As they turned west onto San Jacinto Avenue, Officer Vagher saw the Dodge Intrepid turn north into an alleyway and then immediately turn into a backyard. Officer Vagher followed and initiated a traffic stop in that yard.

As Officer Vagher was getting out of his vehicle, Bojorquez-Carrasco and his passenger, Freddy Padua, were also getting out of theirs. Bojorquez-Carrasco appeared very agitated and reportedly told Officer Vagher, "[Y]ou can't do this. This is wrong. You can't do this." That statement was either unprovoked or in response to Officer Vagher accusing Bojorquez-Carrasco of running from the police. Regardless of the context, Officer Vagher's responded by telling Bojorquez-Carrasco to put his hands on his vehicle. Bojorquez-Carrasco refused. Officer Vagher tried to force Bojorquez-Carrasco to comply and a physical altercation ensued. Officer Vagher later stated that he thought Bojorquez-

2

Carrasco was trying to turn to face him so that he could "chest-up" or "square up" to fight. Rather than fight, however, Bojorquez-Carrasco escaped from Officer Vagher's grip and ran into the alley.

Officer Vagher gave chase and caught up with Bojorquez-Carrasco in the alley where he, again, tried to restrain him. Bojorquez-Carrasco continued to resist until Officer Vagher reached for his taser and said that he would have to deploy it if Bojorquez-Carrasco did not stop. Bojorquez-Carrasco later stated that the threat scared him because he wound up in the hospital after being tased by Officer Vagher in a previous incident. He therefore responded by reaching for Officer Vagher's hand to try to prevent him from using the taser. Officer Vagher was able to get his hand away and fired two separate taser cartridges at Bojorquez-Carrasco, both of which missed. At this point, Bojorquez-Carrasco turned and ran away again, this time going from the alley to the backyard where the traffic stop was initiated and then continuing on into the front yard of the house. Officer Vagher followed and caught up to Bojorquez-Carrasco for a second time in the front yard of a neighboring house. Officer Vagher attempted to grab Bojorquez-Carrasco by the jacket that he was wearing but it came off in his hands. He tried a second time but achieved the same result, this time tearing off a long-sleeve shirt that Bojorquez-Carrasco was wearing. Finally, on his third attempt, Officer Vagher was able to get ahold of Bojorquez-Carrasco by his t-shirt, bring him to the ground, and arrest him.

After placing Bojorquez-Carrasco under arrest, Officer Vagher searched the jacket that was pulled off during the struggle. Upon doing so, Officer Vagher found: (1) a glass smoking pipe; (2) a baggie containing a green, leafy vegetation; (3) 17 baggies containing a white crystal-like substance; and (4) 6 empty plastic baggies. Officer Vagher field tested the white crystal-like substance and got a positive indication for the presence of methamphetamine. That test was later confirmed by laboratory testing at the Kansas Bureau of Investigation (KBI), which concluded that the baggies contained 4.04 grams of

methamphetamine and the glass smoking pipe contained methamphetamine residue. The KBI also determined that green, leafy vegetation was 0.18 grams of marijuana.

Based on Bojorquez-Carrasco's conduct, as well as the search of the jacket, he was charged with multiple felony and misdemeanor counts. He pled not guilty to all of them and the case proceeded to trial on July 30, 2018. At that trial, Bojorquez-Carrasco testified in his own defense and claimed that he gave the jacket in which the drugs were found to his passenger, Pauda, earlier in the day because Pauda had complained about being cold. Pauda then purportedly returned the jacket to Bojorquez-Carrasco before Officer Vagher and Officer Prieto saw him driving west on San Jacinto Avenue. Pauda, who testified on behalf of the State, denied that such an exchange took place and instead claimed that he saw Bojorquez-Carrasco bagging up methamphetamine and putting it into the pocket of his jacket just before the two left to go to a job site.

After the close of evidence, the case proceeded to the jury instructions conference where Bojorquez-Carrasco did not:  (1) request an instruction on simple possession as a lesser included offense to the charge of possession of methamphetamine with intent to distribute; or (2) request an unanimity instruction regarding the battery against a law enforcement officer charge. In fact, Bojorquez-Carrasco did not object to any of the district court's proposed jury instructions. The parties then presented their closing arguments and the jury deliberated, ultimately finding Bojorquez-Carrasco guilty on all but one count—count 2 possession of marijuana with intent to distribute. The district court accepted the jury's verdict and, on August 29, 2018, sentenced Bojorquez-Carrasco to 103 months in prison. He now timely appeals those convictions.

4

## DID THE DISTRICT COURT ERR WHEN IT FAILED TO GIVE AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF SIMPLE POSSESSION?

Bojorquez-Carrasco first argues that the district court committed clear error when it failed to give an instruction on simple possession as a lesser included offense to the charge of possession of methamphetamine with intent to distribute. When analyzing jury instruction issues, appellate courts follow a three-step process:

> "'(1) determining whether the appellee court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

In this case, there is no dispute that Bojorquez-Carrasco failed to properly preserve this issue for appellate review because he failed to either request the lesser included offense instruction or lodge a timely and appropriate objection when it was not given by the district court. There is also no dispute that the district court erred when it failed to give an instruction on simple possession as a lesser included offense to the charge of possession of methamphetamine with intent to distribute because such an instruction was both legally and factually appropriate. The only issue left to address is the third step of the analysis.

Where a defendant fails to object to or otherwise preserve a jury instruction issue for appellate review, he or she must show that the failure to give an instruction was clearly erroneous. *McLinn*, 307 Kan. at 317-18. In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The clear error determination must review the impact of the erroneous instruction in light of

the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. See *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015). To establish clear error, "'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.'" *State v. Cooper*, 303 Kan. 764, 770, 366 P.3d 232 (2016). Here, Bojorquez-Carrasco argues that the failure to give an instruction on the lesser included offense of simple possession was clearly erroneous because there was no evidence that he sold or intended to sell any of the methamphetamine. He then points to the glass smoking pipe that contained methamphetamine residue to argue that the methamphetamine he possessed was for personal use and not for distribution to others. But in making those arguments, Bojorquez-Carrasco concedes that there was sufficient evidence for the jury to convict him of possession with intent to distribute. His argument is essentially that the jury might have convicted him of simple possession if it had been given an instruction on that lesser included offense. That falls far short of carrying his burden and establishing that giving the lesser included offense instruction would have made a difference in the verdict. See *Cooper*, 303 Kan. at 770; *Betancourt*, 299 Kan. at 135.

Taking the evidence favorably to the State, as we must at this juncture, Officer Vagher testified that, based on his training and experience, relatively small quantities of methamphetamine in multiple plastic baggies had been packed for sale or distribution. His testimony was essentially undisputed on this point. Pauda testified that he watched Bojorquez-Carrasco put the methamphetamine in the baggies. While Bojorquez-Carrasco vigorously disputed that testimony, we are obligated to credit Pauda's account. Those pieces of testimonial evidence together support a verdict of possession with intent to distribute. It is improbable, at the very least, that Bojorquez-Carrasco would have packaged the methamphetamine in that manner for his personal use.

As a result, although the district court erred when it failed to give an instruction on simple possession as a lesser included offense, the error was not clearly erroneous in light

of the entire record and the overwhelming evidence against Bojorquez-Carrasco. See *In re Care & Treatment of Thomas*, 301 Kan. at 849.

### DID THE DISTRICT COURT ERR WHEN IT FAILED TO GIVE AN UNANIMITY INSTRUCTION REGARDING THE BATTERY AGAINST A LAW ENFORCEMENT CHARGE?

Bojorquez-Carrasco next claims that the district court committed reversible error when it failed to give an unanimity instruction. He argues that the jury could have relied on three separate acts to convict him of battery against a law enforcement officer: (1) the confrontation in the backyard next to the purple Dodge Intrepid; (2) the confrontation in the alley behind the house; and (3) the confrontation in the front yard of the neighboring house. Under Kansas law, a defendant is entitled to a unanimous jury verdict. K.S.A. 22-3421; *State v. Santos-Vega*, 299 Kan. 11, 18, 321 P.3d 1 (2014). When a case involves multiple acts, any one of which could constitute the crime charged, the jury must be unanimous in finding what specific act constitutes the crime. See *State v. De La Torre*, 300 Kan. 591, 595, 331 P.3d 815 (2014). To ensure jury unanimity in these multiple act cases, the State must either specify which act it is relying on or the district court must instruct the jury that it must unanimously agree on which act constitutes the crime. *State v. Akins*, 298 Kan. 592, 618, 315 P.3d 868 (2014); *State v. Voyles*, 284 Kan. 239, 244-45, 160 P.3d 794 (2007).

Appellate courts utilize a three-part test when analyzing multiple act cases. *State v. King*, 297 Kan. 955, 979, 305 P.3d 641 (2013); *Voyles*, 284 Kan. at 244-45. First, as a threshold matter, the court must determine whether the case involved multiple acts or a unified course of conduct. *King*, 297 Kan. at 979; *Voyles*, 284 Kan. at 244. This is a question of law over which an appellate court exercises unlimited review. *Santos-Vega*, 299 Kan. at 18. If the court finds that the defendant's conduct was unitary, then the analysis ends, and the district court is affirmed. *Voyles*, 284 Kan. at 244. If, however, the court determines that multiple acts occurred, the next question is whether error was

committed because either the district court failed to instruct the jury to agree on the specific act for each charge or the State failed to inform the jury which act to rely upon during its deliberations. *King*, 297 Kan. at 979; *Voyles*, 284 Kan. at 244-45. Finally, in cases such as this where error occurred but the defendant failed to request an unanimity instruction or object to its absence, the defendant must show that the error was clearly erroneous. K.S.A. 2019 Supp. 22-3414(3); *Voyles*, 284 Kan. at 252-53.

Turning to the first step, this panel must determine whether Bojorquez-Carrasco's alleged battery against a law enforcement officer involved multiple acts or unitary conduct. See *King*, 297 Kan. at 979; *Voyles*, 284 Kan. at 244. "Multiple acts" are legally and factually separate incidents that independently satisfy the elements of the charged offense. *King*, 297 Kan. at 980; see also *State v. Kesselring*, 279 Kan. 671, 682, 112 P.3d 175 (2006) ("The threshold question in a multiple acts analysis is whether defendant's conduct is part of one act or represents multiple acts which are separate and distinct from each other."). Incidents are factually separate when independent criminal acts occurred at different times or different locations, when a criminal act is motivated by a fresh impulse, or when the act is interrupted by an intervening event. *King*, 297 Kan. at 981.

To convict Bojorquez-Carrasco of battery against a law enforcement officer, the jury was instructed that it must find: (1) Bojorquez-Carrasco knowingly caused physical contact with Officer Vagher in a rude, insulting, or angry manner; (2) Officer Vagher was a uniformed and properly identified city law enforcement officer; (3) Officer Vagher was engaged in the performance of his duty; and (4) the act occurred on or about the November 1, 2017, in Grant County, Kansas. Bojorquez-Carrasco claims that three separate acts could have satisfied those elements—namely the confrontation in the backyard, the confrontation in the alley, and the confrontation in the front yard. These acts were separate, Bojorquez-Carrasco argues, because they occurred in three different locations (the backyard, the alley, and the front yard), were separated by an intervening occurrence (Bojorquez-Carrasco running away), and were motivated by fresh impulses

8

(escaping what Bojorquez-Carrasco thought was an unlawful arrest, avoiding the taser, and escaping again). He also points to the fact that the State spoke about the three acts separately during its closing argument to further support his claim that the acts are separate and distinct.

The State takes the position that the confrontations between Bojorquez-Carrasco and Officer Vagher are better characterized as being part of a singular escape attempt and not multiple events requiring an unanimity instruction. While the confrontations occurred in three slightly different locations, the State argues those location changes were not separated by an intervening event and instead were part of Bojorquez-Carrasco's continuous attempt to run away. The State argues that the events were close in time, there was a causal relationship between the events, and there was no fresh impulse between the events.

The State's position incorrectly treats the distinct acts of battery as nothing more than individual components of a single, overarching escape attempt and submits that resolves any multiplicity issue as to the batteries. The argument ignores the appropriate unit of prosecution for a battery charge in determining multiple instances of a given crime. See *State v. Schoonover*, 281 Kan. 453, 497-98, 133 P.3d 28 (2006). Here, the facts show one unsuccessful escape supporting a single charge of interference with a law enforcement officer. See K.S.A. 2019 Supp. 21-5904(a)(3). But the batteries are distinct, independently prosecutable crimes, even though they may have occurred in the course of another crime. For example, suppose a suspect fled from several law enforcement officers and while doing so shot two of them. Or suppose a suspect stabbed an officer who was attempting to handcuff him and fled. The officer, though injured, caught the suspect a couple of blocks down the street. The suspect again stabbed the officer, who then successfully subdued him. Based on the unit-of-prosecution test, the suspects in those situations could be (and presumably would be) charged with two counts of aggravated battery of a law enforcement officer, see K.S.A. 2019 Supp. 21-5413, and one count of

interference, see K.S.A. 2019 Supp. 21-5904(a)(3). This case is legally no different, except that Bojorquez-Carrasco' serial physical confrontations with Officer Vagher did not result in any significant injury to the officer.

The fact remains that if Officer Vagher had been successful in subduing Bojorquez-Carrasco when he made the initial contact in the backyard, there would have been no second confrontation in the alley. But for Bojorquez-Carrasco's escape from custody and running to the alley, there would have been no allegation of battery arising from the confrontation in the alley. The same analysis applies to the escape from custody in the alley and the confrontation in the front yard. He was charged with battery of a law enforcement officer resulting from three separate contacts with the officer. Two of those contacts would not have occurred but for intervening acts of escape. An unanimity instruction would have been proper. However, the analysis does not end there.

Because we have found the district court erred by failing to provide the jury with an unanimity instruction and in light of the fact that Bojorquez-Carrasco did not request an unanimity instruction, we move to the third step of the process to determine whether it was clearly erroneous not to give the unanimity instruction. In our analysis, we must review the impact of the erroneous instruction in light of the entire record. *In re Care & Treatment of Thomas*, 301 Kan. at 849. On this issue, Bojorques-Carrasco bears the burden to firmly convince us that an unanimity instruction would have made a difference in the verdict. See *Cooper*, 303 Kan. at 770. Bojorques-Carrasco has failed to bear his burden. At no point in his appellate brief does Bojorques-Carrasco dispute that he committed each of the three batteries at issue here. And even if he had, there was no evidence presented at trial to contradict the testimony of Officer Vagher that Bojorques-Carrasco committed each of the three batteries. Bojorques-Carrasco's only argument with respect to the district court's failure to provide the jury with an unanimity instruction is that he was justified in battering Officer Vagher on each of the three occasions because

he was either attempting to prevent an unlawful exercise of police power or acting in self-defense.

Bojorques-Carrasco's claims of justification are no more than unilateral assertions of his belief Officer Vagher was acting in some sort of improper manner. He cites no authority that such a unilateral belief would be justification for a battery against a law enforcement officer. His claim for the need for self-defense arose only after he physically confronted Officer Vagher twice and refused to comply with the officer's directions. Further, Bojorques-Carrasco never requested a self-defense instruction. In all events, there is no argument even advanced that the jury would have reached a different verdict had the instruction error not occurred, and this court is not firmly convinced it would have. The failure to give an unanimity instruction was not clearly erroneous. See *State v. Trujillo*, 296 Kan. 625, Syl. ¶¶ 2-4, 294 P.3d 281 (2013).

Affirmed.