NOT DESIGNATED FOR PUBLICATION

No. 125,767

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL RAY BROCKETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Submitted without oral argument. Opinion filed February 2, 2024. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Sherri L. Becker*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., MALONE and ISHERWOOD, JJ.

PER CURIAM: Michael Ray Brockett appeals his aggravated sexual battery and domestic battery convictions. He alleges that because there were multiple acts that took place during the three-hour assault, each act could provide the basis for each conviction. He maintains then that the failure of the trial court to instruct the jury about unanimity is reversible error, and he demands a new trial. Neither party at trial requested and the court did not give an unanimity jury instruction.

Our review of the record reveals that Brockett's assault did not contain multiple acts as he contends and no unanimity jury instruction was needed. Moreover, under the

1

clear error standard which we must employ because there was no request for an unanimity instruction, we are not firmly convinced that the jury would have reached a different verdict had such an instruction been given. Therefore, we affirm his convictions.

*Bad news comes at the start of a horrible day for the victim, M.M.*

In the early morning of October 5, 2017, M.M. learned that her father had died. She left work early—around 5:00 a.m.—to attend a family gathering at her uncle's house. She remained at her uncle's until around 6:30 a.m. when she went home to attempt to get some sleep. Unable to sleep, M.M. returned to her uncle's house around noon. Later, she left her uncle's house and went next door to her ex-husband's house. There she cooked and cleaned for him because he had a neck injury that prevented him from caring for himself. M.M.'s boyfriend, Michael Ray Brockett, with whom she lived, suspected M.M. was cheating on him, so he stopped by to check on M.M. and her ex-husband two or three times during the day. Around 3:00 p.m., Brockett drove M.M. to their home. They argued during their drive back, which only escalated when they arrived home.

Once at home, M.M. tried to rest in the recliner in the living room of their trailer home, but Brockett prevented her from doing so. M.M. testified that Brockett pushed her, yelled at her, and then straddled her in the recliner, shaking her violently. There was a mattress propped against the wall in the living room that the couple slept on at night. Brockett grabbed the mattress, pushed it to the floor, and forced M.M. on top of it. M.M. tried to escape by pushing him and squirming to break free, but Brockett had her pinned. M.M. testified that she was on her side and Brockett's legs were squeezing her from her back and stomach; he squeezed so hard that she urinated on herself from the pressure. Brockett proceeded to remove her jeans and threw them to the side and told M.M. that "this [sexual intercourse] was going to happen one way or the other." Brockett attempted to pull M.M.'s legs apart with his hand, but she fought back by "screaming, pushing,

2

trying to get away." M.M. testified that she thought he tried to digitally penetrate her vagina but could not say for sure.

After failing to separate M.M.'s legs, Brockett proceeded to masturbate while pinning M.M. down on her back. M.M. testified that Brockett continued masturbating, telling her that he was either going to ejaculate "in you or on you." Brockett attempted to flip her over, but she pleaded with him: "please don't do this to me." She testified that Brockett sat on her chest and attempted to put his penis in her mouth but failed because she kept screaming. He told M.M. to shut up and proceeded to move down her body, biting her right cheek; M.M. squirmed and tried to push Brockett away. Brockett's attempted rape finally concluded after three hours when Brockett ejaculated on M.M.'s stomach and chest area. M.M. testified that Brockett left her and went to the kitchen. Wearing only a t-shirt, no pants, underwear, or shoes, M.M. fled to her neighbor's house across the street while Brockett was distracted.

*M.M. obtains refuge from a neighbor.*

M.M. fled to H.V.'s home, her neighbor. H.V. described M.M. as crying, nervous, shaking, and only dressed in a shirt. She helped M.M. cover up and recalled M.M.'s initial account of the assault. H.V. testified that M.M. told her that Brockett kept her from leaving their trailer, squeezed her until she urinated on herself, tried to rape her, and ejaculated on her. H.V. recalled seeing Brockett shortly after she opened the door for M.M., but Brockett said nothing and returned inside the trailer.

*M.M. describes the assault to various officers.*

EMT Nichole Liggett, a paramedic, spoke to M.M. on the scene. She examined bruising on M.M.'s upper and lower arms and lower legs. She also observed a bite mark on M.M.'s right cheek, noting the teeth impressions on the right-side arch of her cheek

and a second bite mark on M.M.'s right arm. Liggett recounted M.M.'s account of the assault—that Brockett ejaculated on M.M.'s face and skin, slapped M.M. with an open hand back and forth, and squeezed her until she urinated on herself. Liggett also testified that M.M. told her that she was sexually assaulted earlier that morning when there was penetration by Brockett's penis into M.M.'s vagina. Liggett then transported M.M. to the hospital and turned her over to hospital staff.

*M.M. recounts her assault to Sergeant Kory Webb.*

M.M. next talked to Sergeant Kory Webb after she was released from the hospital. Sergeant Webb testified that he was called to respond to the scene at 6:11 p.m. and arrived a few minutes after that. At that time, he spoke with a witness on scene. After he could not locate Brockett, Sergeant Webb went to the police department to interview M.M. later that evening.

During the interview, M.M. gave Sergeant Webb her third account of the sexual assault. She described how Brockett held her down forcibly, causing her to urinate on herself, and masturbated on her. Webb testified that he observed bruising on M.M.'s cheek, arms, and stomach. On cross-examination, Webb testified that M.M. did not provide information about a sexual assault earlier that morning.

*M.M. tells a detective about the assault.*

M.M. gave her fourth and final recount of the sexual assault to Detective Travis Eichelberger. In Eichelberger's interview with M.M., she said that the assault began by Brockett repeatedly accusing M.M. of being unfaithful. M.M. recounted that Brockett pushed her, pulled her, and would "slap her around." Once on the mattress and after Brockett removed her pants, M.M. told Eichelberger that Brockett masturbated "down by her knees, her mid-thigh, her pelvis, her stomach, chest, up to her head." M.M. said

4

Brockett put his hands near her vagina but could not be sure if there was penetration because she was squirming, scooting, and attempting to get away while yelling for help. Eichelberger observed bruising up and down M.M.'s arms that appeared fresh but did not observe any bite marks.

*The detective interviews Brockett.*

Detective Travis Eichelberger interviewed Brockett after law enforcement officers located him a few lots west of the trailer. In the interview, Brockett denied assaulting M.M. and claimed it was consensual. Brockett did, however, tell Eichelberger that he "ravaged her," stating he kissed her up and down sensually but denied that it could have been rough sex that M.M. did not like. Brockett said that he does "like to hit hard, if you know what I mean." Eichelberger also testified that Brockett admitted to having an argument with M.M. over Brockett's use of controlled substances and drinking.

*Closing arguments at trial incapsulate the parties' positions.*

At trial, the State asserted in closing argument that all acts occurred on October 5, 2017, in M.M. and Brockett's trailer home and submitted that every element of each charged crime was met. The State listed the elements of each crime: (1) aggravated sexual battery: Brockett touched M.M. without consent and with the intent to arouse or satisfy his sexual desires as he held M.M. down and forced himself on her; (2) domestic battery: the act of biting M.M. on the cheek was committed in a rude, angry, or insulting manner; and (3) criminal restraint: he restricted M.M. by forcing her on the mattress and restricting her ability to leave. Concluding the burden of proof was met, the State submitted that Brockett's motive stemmed from anger because he believed that M.M. cheated on him.

In Brockett's closing argument, he argued that because M.M. and Brockett had consensual sex on the morning of October 5, 2017, the later events were consensual. He suggested that because M.M. lost her father that day, her mind was unclear. He also questioned whether M.M.'s testimony was credible given she yelled and screamed but no one heard her, despite the open window and the time of day. Finally, Brockett argued that M.M.'s testimony was inconsistent because she claimed to have fought back, but there was no evidence of marks on Brockett.

The jury returned a guilty verdict on all three charges. The district court sentenced Brockett to 120 months in prison for the aggravated sexual battery charge with lifetime postrelease supervision and two 12-month sentences on the domestic battery and criminal restraint charges to run concurrent to the felony sentence.

*We focus on the question of jury unanimity.*

The right to a unanimous jury verdict in Kansas is guaranteed by statute. See K.S.A. 22-3421; K.S.A. 22-3423(1)(d). When challenged on appeal, exercising unlimited review, we must first determine whether the case presents evidence of multiple acts. See *State v. Foster*, 290 Kan. 696, 713, 233 P.3d 265 (2010).

There is an important choice that must be made. If we decide that the case involved multiple acts, "either the State must have informed the jury which act to rely upon in its deliberations or the district court must have instructed the jury to agree on the specific criminal act to convict. The failure to elect or instruct is an error." *Foster*, 290 Kan. at 713. If we find an error based on the State's failure to elect or the district court's failure to instruct, we must then determine whether the error was reversible. If the challenged jury instruction was not requested during trial, the instructional error is reversible only if the failure to give the instruction was clearly erroneous. *State v. Smith*, 317 Kan. 130, 136, 526 P.3d 1047 (2023). So, in plain language, if there are multiple acts

6

in a prosecution, the State must choose what act it is relying on to support the conviction or the judge must instruct the jury that they must unanimously agree upon the act that convicts the accused.

In cases when the defendant did not present a unified defense or general denial, we will reverse if we are firmly convinced the jury would have returned a different verdict if the instruction had been given. *State v. King*, 297 Kan. 955, 982-83, 305 P.3d 641 (2013); *State v. Voyles*, 284 Kan. 239, 253, 160 P.3d 794 (2007).

Here, neither party requested the unanimity instruction before the district court and thus Brockett's challenge to the omitted instruction is reviewed under the clearly erroneous standard.

*Were there multiple acts of aggravated sexual battery in the assault?*

"Multiple acts" are "legally and factually separate incidents that independently satisfy the elements of the charged offense." *State v. De La Torre*, 300 Kan. 591, 598, 331 P.3d 815 (2014). Four factors guide multiple acts case analyses: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular, whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct. *State v. Schoonover*, 281 Kan. 453, 507, 133 P.3d 48 (2006). A multiple acts problem may arise even when the factual details about the multiple incidents are indefinite as to precisely when each occurred or even how many acts occurred. *De La Torre*, 300 Kan. at 598.

To convict Brockett of aggravated sexual battery, the court instructed the jury that the State must prove (1) Brockett touched M.M.; (2) that the touching was done with the intent to arouse or satisfy the sexual desires of Brockett; and (3) that the touching was

7

committed without the consent of M.M. under circumstances where she was overcome by force or fear. M.M. testified that the assault occurred in the afternoon to early evening on October 5, 2017, and lasted for around three hours. She testified that the assault continued the entire time and only concluded once Brockett ejaculated onto her stomach and face.

*Did earlier intercourse in the morning compel the giving of an unanimity instruction?*

Brockett argues that because there was some evidence presented to the jury that a sexual assault occurred in the morning of October 5, 2017, the jury may have used the morning assault as the basis for the conviction of aggravated sexual battery. Brockett points to EMT Liggett's testimony where she recalled her interview with M.M. M.M. told Liggett that she had been "assaulted earlier that day by the same individual and that in the morning . . . that he sexually assaulted her *then*, that there was penetration at *that time*. [M.M.] said that *this time* there wasn't any penetration . . . ." (Emphases added.) Because of this testimony, Brockett posits that the jury heard testimony that "multiple sexual acts constituting aggravated sexual battery offenses occurred on October 5, 2017—the date specified in the Complaint/Information."

M.M.'s testimony did not allege multiple sexual assaults. She testified that intercourse occurred on the morning of October 5, 2017, without stating it occurred without her consent or that she was overcome by force or fear.

Given the lack of testimony, the jury had no evidence about the circumstances of the morning sexual intercourse to find the elements of aggravated sexual battery had occurred. Jurors are presumed to follow their instructions provided by the district court. *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023). Thus, there is no possibility that the jury could have convicted Brockett of aggravated sexual battery based on morning sexual intercourse.

8

Because the testimony of Liggett and the testimony of M.M. do not discuss the morning sexual intercourse between M.M. and Brockett such that a jury might rely on their testimony to find Brockett guilty of aggravated sexual battery or domestic battery, Brockett's argument lacks merit.

*Were there several discrete acts here?*

Brockett next argues that under the four factors pronounced in *Schoonover*, the conduct testified to by M.M. was not unitary but separate, multiple, and discrete acts. We must answer four questions.

*Did the acts occur at or near the same time?*

Under this factor, Brockett argues the acts did not occur at or near the same time. Basing his claim on M.M.'s testimony that the assault lasted multiple hours and the description of two different sexual assaults based on EMT Liggett's testimony, Brockett claims the acts lack temporal proximity.

The jury heard evidence that the sexual assault in the afternoon of October 5, 2017, lasted three hours, during which the conduct reported by M.M. was ongoing. As stated above, Liggett testified that during her initial interview with M.M., she mentioned a previous incident that morning that involved penetration. Yet M.M. did not testify to the specifics of the sexual intercourse nor did she testify the intercourse was non-consensual. There was little mention of this incident at trial, and the jury would not have found the incident to be the event or act that the aggravated sexual battery or domestic battery involved.

Therefore, the continuing conduct throughout the three-hour assault took place at or near the same time. This factor weighs against a finding of multiple acts.

9

*Did the acts occur at the same location?*

Under this factor, Brockett argues the "testimony did not indicate that the conduct occurred in multiple locations, but M.M. claimed she was scooting away from Michael any time she was able, but he would grab her and pull her back."

The evidence reveals all the conduct occurred in the living room of Brockett and M.M.'s trailer. As a result, this factor weighs against a finding of multiple acts.

*Was there a causal relationship between the acts?*

Brockett argues that the acts of flipping M.M. into different positions and M.M.'s attempts to escape and his efforts to keep M.M. restrained constitute intervening events.

The State counters there was an unbroken causal connection between the conduct. The State points out that there was no evidence that Brockett "went to another room, used the restroom, took a cigarette break, made a phone call, answered the door, etc." Instead, the State argues that the only evidence at trial involved a single, unitary transaction which began when M.M. and Brockett returned to the trailer home and ended when Brockett ejaculated on M.M. and went into another room, which allowed M.M. to escape.

M.M. testified that the sexual assault was ongoing for three hours. The causal relationship between Brockett's conduct was his belief that M.M. cheated on him. She testified that Brockett showed up at her ex-husband's house two or three times, and after the last time, M.M. and Brockett left together only to argue the entire drive home. Once back at their trailer home, the argument continued, and Brockett escalated by pushing M.M. onto the mattress and sexually assaulting her.

10

Detective Eichelberger testified that M.M. told him that Brockett continued accusing her of being unfaithful throughout the sexual assault.

The evidence shows a causal relationship between Brockett's anger that M.M. cheated on him and his conduct of assaulting M.M. There was no evidence of any intervening events. Thus, this factor weighs against a finding of multiple acts.

*Was there a fresh impulse motivating some of the conduct*?

Brockett argues under this factor that if M.M.'s testimony is believed, "then each time she got away from him, and he pulled her back, he was provided an opportunity to reflect on his conduct and stop." Thus, Brockett claims, each instance of attempted escape constitutes an intervening event, resulting in a fresh impulse.

In the evidence presented to the jury, there is no break in the chain of events on the afternoon of October 5, 2017, such that Brockett could generate a fresh impulse to continue the sexual assault. M.M. testified that the assault was ongoing and only stopped when Brockett ejaculated on her.

The State cites several Kansas cases to support their position that the entire three-hour assault was unitary conduct. We find two instructive. In *State v. Sprung*, 294 Kan. 300, 307, 277 P.3d 1100 (2012), the court found unitary conduct where the defendant digitally penetrated the victim's vagina and anus, pushed her off his lap, and placed her hand on his penis. Then, in *State v. Kesselring*, 279 Kan. 671, 683, 112 P.3d 175 (2005), the court found one continuous incident of aggravated kidnapping which could not be factually separated, even though the conduct took place over several hours and with an attempted escape by the victim.

11

In contrast, in *Voyles*, the court easily found a multiple acts error where two victims alleged the defendant's sexual abuse occurred over several months in different locations. 284 Kan. at 244.

Here, the evidence establishes that Brockett's assault of M.M. constituted a single, continuous transaction. The assault took place in the same location on the afternoon of October 5, 2017, and stemmed from a single motive: Brockett's anger over the belief that M.M. cheated on him. There was no evidence of any intervening acts causing Brockett to reflect and continue the assault based on a fresh impulse. While M.M. attempted to scoot away, she did not escape Brockett nor was she successful in getting Brockett to stop the sexual assault. The assault, thus, did not contain multiple acts and no unanimity jury instruction was needed. We turn to the question about the misdemeanor charges.

*Were there multiple acts of domestic battery—one of the misdemeanor charges—in the assault?*

Brockett argues the jury could have convicted him of domestic battery based on multiple acts that took place during the assault on the afternoon of October 5, 2017. Brockett points to testimony by M.M. that Brockett pushed her and yelled at her, forced her onto the mattress, wrapped his legs around her waist and squeezed so hard she urinated on herself, attempted to force her to perform oral sodomy, and bit her on the cheek. In support of his argument, Brockett cites the two photographs presented at trial that documented multiple bruises on M.M. Brockett claims the presence of multiple bruises and different acts that could constitute battery that took place during the assault deem the conduct multiple acts.

Similar to the aggravated sexual battery analysis, the domestic battery conduct took place in the same location and within three hours. Brockett's conduct was motivated by his anger that M.M. was unfaithful and his actions continued during the entire three

12

hours based on this anger. Finally, there were no intervening acts that could have given rise to a fresh impulse to continue the assault. Therefore, the domestic battery stemmed from a single, unitary course of conduct where Brockett was angry with M.M., and during his sexual assault of her, bit her cheek causing bruising.

*If there was error, it is not reversible under the clearly erroneous standard.*

The failure to elect or instruct when a case involves multiple acts on which the jury may rely to find the defendant guilty constitutes an error. See *Voyles*, 284 Kan. at 253.

In the presentation of their case to the jury, the State characterized the aggravated sexual battery conduct as Brockett's assault of M.M. on the afternoon of October 5, 2017. The State gave a closing argument in which it repeated the elements required under the charged offense and told the jury that it did not want to "belabor the facts." If this court finds the evidence presented to the jury consisted of multiple acts, there is error unless the State clearly elected an act for the jury to convict or the district court gave an unanimity instruction to the jury.

For the domestic battery charge, the State used Brockett's act of biting M.M.'s cheek as the conduct the jury should focus on and rely on to find Brockett guilty of domestic battery. The State specifically mentioned this act in closing argument. Thus, for the domestic battery charge, even if this court finds there were multiple acts on which the jury could have relied to find Brockett guilty, the State elected the act in their closing argument. Therefore, there is no error on the domestic battery charge.

To warrant reversal, we must be firmly convinced that the jury would have returned a different verdict if the instruction had been given. The defendant's presentation of a unified defense or general denial points to a lack of clear error but does not foreclose

13

a finding of clear error where there were inconsistencies in the evidence that could have led to jury disagreement and confusion. *King*, 297 Kan. at 983-84.

Here, Brockett did not testify nor did he present any witnesses at trial. Brockett's statements to Detective Eichelberger in their interview amount to a general denial defense. In the interview, Brockett admitted to the sexual intercourse but objected to the assault. Brockett told Eichelberger that he "ravaged" M.M. and disclaimed doing any of the conduct that M.M. alleged. Further, the testimony at trial was consistent throughout M.M.'s recount of the assault to multiple witnesses and contained no real discrepancies. The jury found the witnesses—in particular M.M.'s testimony—credible and convicted Brockett of aggravated sexual battery, domestic battery, and criminal restraint. We are not firmly convinced that the jury would have reached a different verdict had the instruction been given.

Affirmed.